163 U.S. 491 (1896)
MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY
v.
COOK.
No. 178.
Supreme Court of United States.
Argued and submitted March 24, 1896.
Decided May 25, 1896.
ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.
*494 Mr. James Hagerman and Mr. T.N. Sedgwick, for plaintiff in error, submitted on their brief.
Mr. Nelson Case for defendant in error.
MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.
Plaintiff claimed the premises in question as a part of its right of way, under and by virtue of the act of Congress approved July 26, 1866, entitled "An act granting lands to the State of Kansas to aid in the construction of a Southern branch of the Union Pacific Railway and Telegraph, from Fort Riley, Kansas, to Fort Smith, Arkansas." 14 Stat. 289, c. 270.
By this act five alternate sections of land per mile on each side of the road were granted to the State of Kansas for the use and benefit of the railroad company, and in case it appeared that the United States had "when the line of said road is definitely located, sold any section, or any part thereof, granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purposes whatever," then other lands might be selected in lieu thereof: "Provided, That any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner *495 by competent authority, for the purpose of aiding in any object of internal improvement or other purpose whatever, be, and the same are hereby, reserved and excepted from the operation of this act, except so far as it may be found necessary to locate the route of said road through such reserved lands, in which case the right of way, two hundred feet in width, is hereby granted, subject to the approval of the President of the United States."
The fourth section read: "That as soon as said company shall file with the Secretary of the Interior maps of its line, designating the route thereof, it shall be the duty of said Secretary to withdraw from the market the lands granted by this act, in such manner as may be best calculated to effect the purposes of this act and subserve the public interest."
By the sixth section it was provided: "That the right of way through the public lands be, and the same is hereby, granted to said Pacific Railroad Company, Southern branch, its successors and assigns, for the construction of a railroad as proposed: ... Said way is granted to said railroad to the extent of one hundred feet in width on each side of said road where it may pass through the public domain; also all necessary ground for station buildings, workshops, depots, machine shops, switches, side tracks, turn-tables and water stations."
The land in question was a part of the land ceded to the United States by the Great and Little Osage Indians by the treaty proclaimed January 21, 1867, 14 Stat. 687.
From the statement of facts it appears that prior to December 24, 1867, a line was surveyed for the route of the railroad by the chief engineer of the company, which was the line from which the granted lands were withdrawn from market, but that line did not touch the quarter section embracing the land described in the petition. The precise date of the filing of the map and profile of this survey does not appear, but this is not material.
In the instances of many of the land grants, the acts contemplated a preliminary designation of the general route by map filed in the Department of the Interior, upon which the *496 lands were withdrawn, but the grants only took effect on a subsequent designation of the definite location of the line of the road. Kansas and Pacific Railroad v. Dunmeyer, 113 U.S. 629; United States v. Southern Pacific Railroad, 146 U.S. 570. But this grant made no provision for any preliminary surveys and maps, and the only map provided for was that mentioned in section four, being, as stated, a map of "its line designating the route thereof." We think that by the filing of the map of the line surveyed the route was definitely fixed, within the intent and meaning of the act, and while the principal object in filing the map was to secure the withdrawal of the lands granted, it also operated, and could not otherwise than operate, to definitely locate the line and limits of the right of way. And this view is sustained by previous adjudications of this court.
By the act of Congress of July 23, 1866, c. 212, entitled "An act for a grant of lands to the State of Kansas to aid in the construction of the Northern Kansas Railroad and Telegraph," 14 Stat. 210, a grant of lands to the State of Kansas for the benefit of the St. Joseph and Denver City Railroad Company was made in substantially the same terms as those of the grant of July 26, 1866, under consideration.
In Van Wyck v. Knevals, 106 U.S. 360, this act came before this court for construction, and the rights of the parties depended on the time of the definite location of the road. Knevals, the complainant below, claimed through the company, and contended that the filing of the map with the Secretary of the Interior was the location of the road, and Mr. Justice Field, speaking for the court, said: "We are of opinion that the position of the complainant is the correct one. The route must be considered as `definitely fixed' when it has ceased to be the subject of change at the volition of the company. Until the map is filed with the Secretary of the Interior, the company is at liberty to adopt such a route as it may deem best, after an examination of the ground has disclosed the feasibility and advantages of different lines. But when a route is adopted by the company and a map designating it is filed with the Secretary of the Interior and *497 accepted by that officer, the route is established; it is, in the language of the act, `definitely fixed,' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent. No further action is required of the company to establish the route." Walden v. Knevals, 114 U.S. 373. And this was in accordance with the ruling of Mr. Justice Miller, on circuit, in Knevals v. Hyde, 6 Fed. Rep. 651.
The same conclusion necessarily followed in respect of the right of way. The grant of the lands and the grant of the right of way were alike grants in prsenti and stood on the same footing, so that, before definite location, all persons acquiring any portion of the public lands after the passage of the act took the same subject to the right of way for the proposed road. The easement and the lands were afloat until by definite location precision was given to the grant and they became permanently fixed. Railroad Co. v. Baldwin, 103 U.S. 426.
After the line had thus been definitely located, on October 9, 1869, the quarter section containing the real estate in controversy was entered at the government land office by W.A. Hodges, to whom the proper certificate was that day issued, under a resolution of Congress, approved April 10, 1869, 16 Stat. 55, in favor of bona fide settlers residing on any portion of the land acquired from the Osage Indians by the treaty proclaimed January 21, 1867. Between May 1 and June 6, 1870, the railroad company ran a second line, on which it built its road between those two dates, and entered into occupancy of a right of way one hundred feet in width. This line ran something like a mile east of that of definite location and through the quarter section in question, but none of the real estate in dispute lies within the right of way so occupied. On November 1, 1870, a patent was issued in due form to Hodges pursuant to his entry, and defendant Cook (under whom defendant Printz was in possession as tenant) holds by a perfect chain of title from Hodges. The issuing of the patent shows that the land department had found the existence of all the conditions, such as actual occupancy of *498 and residence on the premises and like matters, requisite thereto, and it took effect by relation as of the date of the certificate. It follows that as the rights of the settler were acquired after the right of way of the road had been definitely located, he was not subject to any risk which others may incur who purchase while the location remains floating and uncertain, and he could not be deprived of rights which had thus attached by the subsequent action of the company. And his grantees stand in his shoes.
We need not consider what effect, if any, deviations of the kind in question might have upon the grant, Van Wyck v. Knevals, supra; 16 Ops. Attys. Gen. 457; 6 L.D. 209; nor is it necessary to discuss the contention that a railroad company, by once locating its road, has exhausted its authority and cannot relocate it on a new line without additional legislative permission so to do, or the effect of the statute of Kansas, which allows railroad companies to change the location of their tracks. Whatever the rights of the company in this regard, such a change could not affect the rights of third parties, which had in the meantime lawfully intervened. Washington & Idaho Railroad v. Cur d' Alene Railway &c., 160 U.S. 77.
The inquiry does not arise as to how the railroad company acquired the one hundred feet which it occupies for right of way. It may have been purchased, or acquired by condemnation or by gift. We dispose of the case on the ground that on the record before us the state courts did not err in holding that plaintiff was not entitled to recover the premises in controversy, which do not embrace the right of way actually occupied by the company.
Judgment affirmed.