[Civ. No. 222. Fourth Appellate District.—September 23, 1930.]

HARRY SHEEHAN et al., Respondents, v. DWIGHT G. VEDDER et al., Appellants.

Robert M. Pease and Roy P. Dolley for Appellants.

Emmons & Aldrich, Emmons, Aldrich & Mack, Aldrich & Mack and Morrison, Hohfeld, Foerster, Shuman & Clark for Respondents.

MARKS, J.—This appeal comes before us for the second time after a rehearing granted by this court from its decision rendered on February 9, 1930.

In the original opinion (285 Pac. 724), written by the late Mr. Presiding Justice Sloane, there is a clear and distinct statement of the facts as they then appeared from the record before this court. The portions of such statement material to this appeal are as follows:

"This action was brought by the plaintiffs Harry Sheehan and Elbe Oil Land Development Company, a corporation, to quiet title to a tract of land in the county of Kern, described as the S. W. ¼ of section 18, township 28 S., R. 29 E., M. D. B. & M.

"It is alleged in the complaint as the basis of plaintiffs' right of action: That plaintiffs have and are entitled to have the exclusive right to prospect for oil or gas, and to drill for oil or gas in and upon said premises.

"Dwight G. Vedder, sometimes known as D. G. Vedder, R. D. Vedder and Vedder Brothers, Inc., a corporation, hereinafter referred to as defendant Vedder, answered to the complaint by setting up and alleging an adverse interest in this property under a drilling contract entered into by and between the plaintiff Harry Sheehan, as party of the first part, and the defendant Vedder as party of the second part, on the 3d day of June, 1926, about a year prior to the beginning of this action, the terms of which contract will be later considered.

"The exclusive right to prospect for, drill and develop oil on this land claimed by plaintiffs, was acquired by the plaintiff Sheehan under United States prospecting permit serial No. 010684 in the United States Land Office at Visalia, California, under and pursuant to the act of Congress approved February 25, 1920, and it is undisputed that this permit was in full force and effect on June 3, 1926, and that Sheehan was empowered, thereunder to enter into the agreement of that date, with defendant Vedder. The substance of such agreement is as follows:

" 'Said party of the first part does hereby grant and give unto said party of the second part the right to drill and prospect for oil and gas upon some portion of the land embraced in said permit, as above described, and said party of the second part ·does hereby covenant and agree that he will commence the actual drilling of a well thereon, on or before six months after oil has been discovered in p̶a̶y̶i̶n̶g̶ quantities in a well which is to be drilled by said party of the second part on either section in the above township and range they may elect. Said party of the second part is to commence operations for the drilling of said well on or before three years and the drilling· thereof is to be conducted with diligence until oil or gas is encountered in commercial quantities on said land or until such time as said party of the second part is satisfied that no oil or gas exists under said land. . . .

" 'Said party of the second part, in addition to the foregoing, agrees to comply with all the drilling requirements of said Permit and the drilling requirements of any and all leases which may hereafter be granted for said land by the United States, at least sixty days prior to the time when such drilling is required by the terms of said Permit and leases.

" 'Said party of the first part agrees, in the event the Secretary of the Interior so requires, to assign to the party of the second part, the area covered by this contract; said assignment, if made, shall not change or alter the royalties to be paid said party of the first part as hereinafter set forth.

" 'After the discovery of oil on said land in paying quantities the parties of the first part agree to make application for a lease thereof to the United States, and thereafter, and subject to the approval of the Secretary of the Interior, to sublet to the party of the second part or his successors in interest, the portion of the Permit area covered by this contract. . . .

" 'After the discovery of oil in paying quantities, the party of the second part, in addition to satisfying the requirements as to royalties due the United States, agrees to pay to the parties of the first part the equivalent of five per cent (5%) of all oil and gas marketed from that portion of the said land upon which the royalty due the Gov-

ernment is five per cent (5%), in cash at the prevailing market price. . . .

" 'Time is hereby declared to be the essence of this contract, and in the event the party of the second part for any reason fails to comply with the terms hereof, or with any extension hereof in writing, signed by the parties hereto, this contract may be at the option of the party of the first part, terminated and forfeited by giving the party of the second part thirty days' (30) written notice thereof by registered mail at his address at 551 Chamber of Commerce Building, Los Angeles, California, and said party of the second part covenants, promises and agrees that should such notice of forfeiture be given, he will, if the Permit issued to said Harry F. Sheehan has been assigned to him, reassign the same to the said party of the first part within ten days after receiving such notice. . . .

" 'The party of the second part at any time before or after the discovery of oil on said premises may quitclaim said property or any part thereof to the parties of the first part, their successors or assigns, and thereupon all rights and obligations of the parties hereto, one to the other, shall thereupon cease and determine as to the premises quitclaimed.

" 'This contract shall inure to the benefit of, and be binding upon the heirs, assigns and successors in interest of the respective parties hereto.

" 'In witness whereof, the parties hereto have set their hands the day and year hereinabove first written.

" 'HARRY F. SHEEHAN,

" 'JUSTINE SHEEHAN,

" 'Parties of the First Part.

" 'D. G. VEDDER,

" 'Party of the Second Part.'

"Defendant Vedder, by amended answer, after setting up this contract, alleges that on or about June 5, 1927, he in writing notified the plaintiffs that he then was ready, able and willing to perform said contract and to commence and prosecute the work of prospecting and drilling for oil and gas, as provided in the contract, but that plaintiffs failed and refused and have ever since failed and refused to give defendant possession for said purposes, and then and ever since have denied the validity and effect of said contract,

although defendant at all times was and still is ready, able and willing to perform on his part.

"The amended answer further alleges that the only claim of right or interest in said premises of the plaintiff Elbe Oil Land Development Company is by virtue of a contract practically identical in its terms with the Vedder contract entered into between the plaintiff Sheehan and one L. S. Barnes, of date April 7, 1927. That Barnes was, at the date of said contract, and ever since has been, the secretary and a member of the board of directors of the plaintiff Elbe Oil Land Development Company, and that the said Barnes took and received said contract as the agent of, and for the benefit of, said corporation, and has transferred and assigned said contract to said corporation.

" That although said contract is dated April 7, 1927, it was not executed until long after that date, namely, on or about June 1, 1927. And that said Barnes and said Elbe Corporation at the time of execution of the latter contract were informed and knew of the contract of defendant Vedder.

"On this alleged state of facts plaintiffs demanded judg-· ment on the pleadings, which was granted, and it is from such judgment that this appeal is taken."

On the petition for rehearing the following facts were presented to this court, which we deemed sufficient foundation for the order granting a rehearing in this case:

A copy of the oil and gas prospecting permit of the United States of America, Department of the Interior, General Land Office, serial 010684, whereby Harry Sheehan was granted the exclusive right to prospect for oil and gas upon the property in question for a period of two years from and after the thirty-first day of October, 1924, was for the first time presented to us. By the terms of this permit it was provided that Sheehan must, within six months from the last-mentioned date, install upon some portion of said lands a substantial and adequate drilling outfit, and to commence actual drilling operations thereon; that within one year from such date he was required to drill one or more wells thereon, not less than six inches in diameter, to a depth of at least five hundred feet; and within two years to drill one or more wells to a depth of at least two thousand feet, unless in each instance valuable deposits of oil·or gas should

be discovered at a lesser depth. The right to cancel such permit for a failure to comply with any of such conditions was reserved to the Secretary of the Interior. On December 22, 1925, an extension of time of such permit was granted to Sheehan until June 30, 1926, and on July 27, 1926, a further extension was granted him until April 30, 1927, within which time he was required to install the drilling outfit upon some portion of the property and commence actual drilling operations thereon. Copies of these extensions were also furnished us. The last paragraph of the last extension was as follows: "You will notify the parties in interest hereof and advise them also that during the time as extended, it is expected that substantial progress will be made toward development and that unless diligence is shown in that respect, this office will not feel justified in sanctioning any further extension of time." Under date of May 12, 1927, Sheehan was advised by the commissioner of the General Land Office in part, as follows: "There has been received in this office application for further extension of time. Filed with the record is an affidavit by L. S. Barnes showing that drilling was commenced on this permit prior to April 27, 1927. As compliance with Paragraph 2 of the permit has been made, the permittee has until October 31, 1927, in which to drill to a depth of five hundred feet, and a further extension of time is not necessary." Certified copies of the original permit, the extensions and the letter of May 12, 1927, are now before this court.

Section 1875 of the Code of Civil Procedure provides in part as follows: "Courts take judicial notice of the following facts: . . . Public and private official acts of the legislative, executive and judicial departments of this State and of the United States. . . . In all of these cases the court may resort for its aid to appropriate books or documents of reference." This section has been construed to permit a court to take judicial notice of a letter from the commissioner of the General Land Office of the United States (*Southern Pac. Co.* v. *Lipman,* 148 Cal. 480 [83 Pac. 445]; *Southern Pac. Land Co.* v. *Meserve,* 186 Cal. 157 [198 Pac. 1055]); of the withdrawal of indemnity lands by the Secretary of the Interior (*Southern Pac. R. R. Co.* v. *Wood,* 124 Cal. 475 [57 Pac. 388]); of regulations of the Department

of the Interior requiring the issuance of a receiver's receipt and entry of homestead location (*Whittaker* v. *Pendola,* 78 Cal. 296 [20 Pac. 680]), and of government surveys (*Rogers* v. *Cady,* 104 Cal. 288 [43 Am. St. Rep. 100, 38 Pac. 81]). In the case of *French* v. *Senate of California,* 146 Cal. 604 [2 Ann. Cas. 756, 69 L. R. A. 556, 80 Pac. 1031], it was held that this judicial notice comes to the aid of the sufficiency of a pleading where necessary. (*Ohm* v. *City and County of San Francisco,* 92 Cal. 437 [28 Pac. 580]; *Mullan* v. *State,* 114 Cal. 578 [34 L. R. A. 262, 46 Pac. 670]; *Fey* v. *Rossi Improvement Co.,* 23 Cal. App. 766 [139 Pac. 908].) ■ With these authorities before us, we are of the opinion that we should take judicial notice of the records and documents of the Land Office relating to the issues on this appeal. ■ Allegations in a pleading of a fact contrary to facts of which judicial notice is taken are not considered as true. (21 R. C. L. 506–509; 21 Cal. Jur. 96, 97; *Fey* v. *Rossi Improvement Co. supra; French* v. *Senate of California, supra.)*

■ We, therefore, have before us the following important facts which were not considered on the original decision of this case: That the original oil and gas prospecting permit under which all of the parties derive their rights, expired by the terms of its last extension, on April 30, 1927; that appellant Vedder agreed to move on to "the lands a substantial and adequate drilling outfit and to commence actual drilling operations" at least sixty days prior to April 30, 1927; that he did not do this and did not offer to perform this obligation of his contract until on or about June 5, 1927; that L. S. Barnes, the predecessor in interest of the Elbe Oil Land Development Company, commenced actual drilling operations upon the property on or prior to April 27, 1927, and thereby prevented the forfeiture of the rights of all parties under the terms of the oil and gas prospecting permit and its extensions.

The former decision of the court was largely based upon the familiar doctrine of equity, that he who asks equity must do equity. The members of this court were of the opinion at that time that respondents should show to the court below that their hands were clean before they be given the relief they asked. It now appears that although Sheehan had not notified Vedder in writing of his failure to

perform the obligations of his contract, Vedder was in actual default at the time Barnes started his drilling operations, and that if these operations had not been so started all rights under the drilling permit might have been forfeited to the government. Vedder had been in actual default in the performance of his contract for more than three months when he offered to perform. Except for Barnes' performance of the drilling requirements of the permit, Vedder's offer to perform on June 5, 1927, might have been worse than an idle gesture, as there then might have been no land upon which he could have drilled and no contract which he might have performed. His contract with Sheehan would have ended with the termination of the drilling permit by the government. We think these facts sufficient to change the equities of the case.

It is well-settled law in California that a contract which cannot be specifically enforced is not a defense in an action to quiet title. (*Hedden* v. *Waldeck*, 89 Cal. App. 494 [265 Pac. 344] ; *Jolliffe* v. *Steele*, 9 Cal. App. 212 [98 Pac. 544] ; *Crane* v. *Roach*, 29 Cal. App. 584 [156 Pac. 375] ; *Archer* v. *Miller*, 73 Cal. App. 678 [239 Pac. 92].)

In order to enable the courts to specifically enforce a contract, the remedy must be mutual to both its parties. As was said in the case of *O'Brien* v. *O'Brien*, 197 Cal. 577 [241 Pac. 861, 865] :

"In the present situation of the parties a remedy by way of specific performance is not available to the defendant for the reason that such a remedy would not be mutual in that the defendant could not be compelled specifically to perform his part of the contract, to-wit, to assist in the care and management of the plaintiff's property, a purely personal service. Equity will not require the specific performance of a contract where the party seeking its enforcement cannot from the nature of the contract be compelled specifically to perform on his part. (Civ. Code, secs. 3386, 3390; *Cooper* v. *Pena*, 21 Cal. 403; *O'Brien* v. *Perry*, 130 Cal. 526 [62 Pac. 927] ; *Berry* v. *Moulie*, 180 Cal. 137 [179 Pac. 686] ; *Poultry Producers, etc.,* v. *Barlow*, 189 Cal. 278 [208 Pac. 93].)"

Nor will the courts of equity decree the specific performance of a number of successive acts and one involving the performance of personal services. (*Poultry Producers*

*Assn.* v. *Barlow, supra; Crane* v. *Roach, supra; Archer* v. *Miller, supra.*) The mere reading of the drilling permit and the Sheehan-Vedder contract shows that the performance of the obligations of these instruments involve both the performance of personal services and the performance of successive acts extending over a number of years, for if oil were found in paying quantities, the contract provided that one well must be drilled on each ten acres of the land. Even if oil were not found, the drilling of a test well usually takes many months and sometimes years of time.

It has been held that an oil-drilling contract which gives to the prospective driller the right to quitclaim the property to his lessor before the discovery of oil, and thereby relieve himself from the obligations of his contract (which proviso appears in the Sheehan-Vedder contract), is not mutual and therefore cannot be specifically enforced. In the case of *Dabney* v. *Key,* 57 Cal App. 762 [207 Pac. 921, 922], it was held as follows:

"In the case of *Sturgis* v. *Galindo,* 59 Cal. 28 [43 Am. Rep. 239], the Supreme Court was considering a case in specific performance. The instrument before the court purported to be a contract of sale of lands supposed to be valuable as a coal mine. The purported contract contained a surrender clause as follows: If the defendant's assignors 'should at any time before the expiration of the time hereinbefore *fixed for the completion of this contract, to-wit, the 14th day of December,* A. D. 1867, become satisfied that it was useless to further prospect said lands agreed to be conveyed for coal, then upon giving thirty days' notice to said party of the first part, in writing, of their intention to abandon said contract, then and thereafter this agreement shall be void, and of no binding force or effect between the said parties or either of them'. The trial court had entered a judgment specifically enforcing the contract. The Supreme Court reversed that judgment and in doing so said: 'It is, moreover, perfectly clear that a specific performance of the contract could not have been performed at the suit of Pacheco; for besides the difficulty of enforcing the performance of personal services, the agreement contained the express stipulation that if, at any time prior to the period fixed for the completion of the contract, Bromley and Jones should become satisfied that it was useless further to pros-

pect the land, they should have the right upon giving thirty days' notice to Pacheco of their intention so to do, to abandon the contract.' 'It is a general principle,' says Mr. Fry at section 286 of his work on Specific Performance, 'that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might in itself be free from difficulty attending its execution in the former.' "

As the Sheehan-Vedder contract cannot be specifically enforced, it can furnish no defense to an action to quiet title and the judgment of the lower court cannot be disturbed.

Judgment affirmed.

Barnard, J., concurred.

Cary, P. J., being absent, did not participate herein.