[Civ. No. 1855.   Fourth Appellate District.—April 14, 1938.]

THE PEOPLE, Appellant, v. TULARE PACKING COM-
PANY et al., Defendants; SOUTHERN PACIFIC
RAILROAD COMPANY (a Corporation), Respondent.

718

Clarence W. Morris, Lincoln V. Johnson, Holoway Jones and George C. Hadley for Appellant.

McFadzean & Crowe for Respondent.

MARKS, J.—This is an action wherein plaintiff sought to condemn for highway purposes two parcels of respondent's property in the city of Tulare. Interests of the defendants were also sought to be condemned. Their cases were evidently tried separately. Hereafter we will refer to the Southern Pacific Railroad Company as the defendant.

The pleadings, findings and judgment designated the tracts of land of defendant to be taken for public use, as "parcel No. 1, first", and "parcel No. 1, second". We will use these designations in this opinion. The trial court fixed the value of parcel No. 1, first, at $8,000, and the value of parcel No. 1, second, at $2,500. No severance damages were allowed. Judgment was entered accordingly and plaintiff has appealed.

The case presents features new to the courts of California. Its decision rests on the source of defendant's title to the parcels and the exact title that it holds. Plaintiff insists that defendant gained title through section two (and section eighteen) of an act of congress approved July 27, 1866 (14 U. S. Stat. 292), and has something in the nature of an easement giving it the right of use only. Defendant maintains with equal confidence that it acquired title under sections three and eighteen of the act and holds the property in fee simple.

On this question the trial court found as follows:

"That it is true that the defendant, Southern Pacific Railroad Company, is the owner in fee simple, and by itself and its Lessee Southern Pacific Company, entitled to and prior

to the commencement of this action was in the possession of said lands under a patent from the United States of America, dated March 13, 1874, and recorded in the office of the County Recorder of the County of Tulare, State of California, on June 27th, 1874, in Liber E of Land Patents, at pages 531, 532 and 533; and that it is also true that the defendant Southern Pacific Railroad Company is the owner in fee, and by itself and its lessee, Southern Pacific Company, entitled to and prior to the commencement of this action was in the possession of said lands under an Act of Congress approved July 27, 1866, entitled 'An Act granting lands to aid in the construction of a railroad and telegraph line from the State of Missouri and Arkansas to the Pacific Coast' (14 Stats. 292); and that it is true that said lands are a part of said right of way and station reservation at Tulare, California; and that at the time of the commencement of this action and for many years prior thereto said lands have been and were in constant use by said defendant, by and through its said lessee as a common carrier of freight and passengers in a regular interstate and intrastate standard gauge railroad business.''

Section two of the act in question provides in part as follows:

''And be it further enacted, That the right of way through the public lands be, and the same is hereby granted to the said Atlantic and Pacific Railroad Company, its successors and assigns, for the construction of a railroad and telegraph as proposed; and the right, power, and authority is hereby given to said corporation to take from the public lands adjacent to the line of said road material of earth, stone, timber, and so forth, for the construction thereof. Said way is granted to said railroad to the extent of one hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary grounds for station-buildings, workshops, depots, machine-shops, switches, sidetracks, turntables and water stations; and the right of way shall be exempt from taxation within the territories of the United States. . . .''

The pertinent provisions of section three of the act are as follows:

''And be it further enacted, That there be, and hereby is, granted to the Atlantic and Pacific Railroad Company, its

successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific Coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of the railroad line, as said company may adopt, through the Territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any State, and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at the time the line of said road is designated by a plat thereof, filed in the office of the commissioner of the general land office; . . . ''

Section eighteen of the act provides as follows:

''And be it further enacted, That the Southern Pacific Railroad, a company incorporated under the laws of the State of California, is hereby authorized to connect with the said Atlantic and Pacific Railroad, formed under this act, at such point near the boundary line of the State of California, as they shall deem most suitable for a railroad line to San Francisco, and shall have a uniform gauge and rate of freight or fare with said road; and in consideration thereof, to aid in its construction, shall have similar grants of land, subject to all the conditions and limitations herein provided, and shall be required to construct its road on like regulations, as to time and manner, with the Atlantic and Pacific Railroad herein provided for.''

It is intimated in some federal cases that a railroad company acquiring title to its right of way in limited fee, under the various railroad aid acts of congress cannot alienate a lateral portion of such right of way for highway purposes without the consent of the federal government. Such consent has been given to an acquisition for highway purposes such as we have before us. (Act of Congress, approved May 25, 1920, 41 U. S. Stat. 621, 43 U. S. C. A. 913; Act of Congress, approved Nov. 9, 1921, 42 U. S. Stat. 212, 23 U. S. C. A. 17.)

We shall have occasion to refer briefly to a certified copy of a map of a portion of defendant's roadbed southerly from Goshen Junction, through the city of Tulare, in Tulare County. ■ The original is on file in the general land office in Washington, D. C. This court denied plaintiff's motion for diminution of the record by the addition of this certified copy of the map (*People* v. *Southern Pac. R. Co.*, 23 Cal. App. (2d) 200 [72 Pac. (2d) 254]) for the reason that it was never made a part of the record in the trial court. However, we are permitted to take judicial notice of its contents (*Sheehan* v. *Vedder*, 108 Cal. App. 419 [292 Pac. 175]), even though we could not permit it to become a part of the formal record.

This map was prepared in 1872. We cannot determine the exact date it was filed in the land office. The patent to sections three and eleven in township 20 south, range 24 east, Mt. Diablo Base and Meridian, in Tulare County, conveying that property to the defendant was executed on March 13, 1874. All of parcel No. 1 first is in section eleven and the majority of parcel No. 1 second is in section three. A small triangular-shaped piece of parcel No. 1 second is in section two, in the same township, range, and county. Defendant proved no title to this last-mentioned land unless it acquired is under sections two and eighteen of the act of congress approved July 27, 1866.

It is not questioned that defendant completed the construction of its railroad through Tulare. It probably filed its location map in 1872. The railroad ran through sections three and eleven to which defendant received its patent in 1874. The grant to its right of way and station grounds, by virtue of the act of congress, therefore antedated its patent to the odd-numbered sections.

An almost exactly similar factual situation is found in the case of *H. A. & L. D. Holland Co.* v. *Northern Pac. Ry. Co.*, 214 Fed. 920. The Northern Pacific Railway Company constructed its railroad under the provisions of the Northern Pacific Land Grant Act of July 2, 1864. (13 U. S. Stat. 365.) Sections two and three of that act are practically identical with the same numbered sections of the act of July 27, 1866, except that the Northern Pacific Railway Company was given a right of way four hundred feet wide, and defendant here was given a right of way two hundred feet

wide. The railroad ran through section seventeen, to which the railway company subsequently received a patent. One of the important questions decided in that case is whether the right of way was held under section two of the act of congress in an estate less than fee, or under the patent in fee. In holding that the title to the right of way was held under section two of the act of congress in an estate less than fee (the court calls it an easement) and not in fee under the patent, the court said:

"Our first inquiry relates to the nature of the railroad company's estate. If title vested in it by operation of section 3 of the grant, there is no room for controversy touching the extent of its rights, for upon that assumption it became clothed with full power of disposition, such as is ordinarily incident to unrestricted private ownership. But a different case is presented if the strip constitutes a part of the right of way granted by section 2. Lands falling within this provision are acquired upon the implied condition that they be used for railroad purposes, and the rights conferred are limited to such use. Generally speaking, it is not within the power of the grantee to defeat the designated purpose of the grant by a voluntary alienation of title, or by abandoning possession to an adverse claimant. . . .

"That Railroad street is part of the right of way so acquired, we entertain no doubt. Physically it is embraced within the boundaries thereof; the grant was *in praesenti*, and was given precision by the filing of the map of definite location; the construction of the road was not a condition precedent to the transfer of title, but title passed upon the selection of a definite route, attended with notice to the government of such selection, through the filing of the map of definite location. (*Northern Pac. R. Co.* v. *Murray*, 87 Fed. 648 [31 C. C. A. 183]; *Sioux City & I. F. Town-Lot & Land Co.* v. *Griffey*, 143 U. S. 32 [12 Sup. Ct. 362, 36 L. Ed. 64]; *Tarpey* v. *Madsen*, 178 U. S. 215 [20 Sup. Ct. 849, 44 L. Ed. 1042]; *Missouri etc. R. Co.* v. *Cook*, 163 U. S. 491 [16 Sup. Ct. 1093, 41 L. Ed. 239]; *Kansas Pac. Railroad Co.* v. *Dunmeyer*, 113 U. S. 629 [5 Sup. Ct. 566, 28 L. Ed. 1122]; *Van Wyck* v. *Knevals*, 106 U. S. 360 [1 Sup. Ct. 336, 27 L. Ed. 201]; *St. Joseph & D. C. Railroad Co.* v. *Baldwin*, 103 U. S. 426 [26 L. Ed. 578].) There is nothing to the contrary in *Jamestown etc. R. Co.* v. *Jones*, 177 U. S. 125 [20 Sup. Ct.

568, 44 L. Ed. 698], or *Stuart* v. *Union Pac. R. Co.*, 227 U. S. 342 [33 Sup. Ct. 338, 57 L. Ed. 535], or *Northern Pac. R. Co.* v. *Smith,* 171 U. S. 260 [18 Sup. Ct. 794, 43 L. Ed. 157]. In the first and second of these cases it was decided only that the definite location of a route may, not must, be made by the actual construction of the road. In the Smith case it was apparently the opinion of the court that the filing of the map of definite location did not necessarily exhaust the railroad company's power of selection, and that, under the circumstances there shown, it acquired a right of way along the line of the road as actually constructed, even though such line deviated from that exhibited upon the maps. But if we assume that in the absence of intervening private rights the railroad company might, with the approbation of the administrative officers of the government, change its route and make an effective selection of a new right of way by the construction of its road, without amending its map or filing a new one, it does not follow that the filing of the map of definite location is ineffective or fails to consummate the grant. If it be objected that the act provides for only one right of way, and the company cannot hold two, the answer is that a title acquired either by the filing of a map or the construction of the road reverts to the United States in case of abandonment, or of forfeiture through non-user, and that therefore, where, as in the Smith case, the right of way shown upon the map of definite location is not occupied by the road as actually constructed, it is to be deemed to have been abandoned and the title thereto lost. In the present case the route was never changed, and it is therefore held that title to the right of way 200 feet on either side of the center line of the railroad track, and including the strip in controversy, passed to the railroad company on October 4, 1880, the date its map was filed in the General Land Office.

"We are unable to accept the view that, because the right of way at this place is in an odd-numbered section, the railroad company took the absolute title, unlimited by the implied condition of reverter attending the right of way grant. No substantial reason has been assigned, and clearly there is none, for assuming that Congress intended such an artificial and whimsical distinction. A strip of land 400 feet wide through the public domain was being withdrawn from private entry and dedicated as a right of way for a trans-

continental railroad. The value of a right of way is dependent upon its continuity, and surely it could not have been contemplated that in case of reversion the government would get back only numerous disconnected fragments of that which it was granting as a continuous line. There is little weight in the suggestion that Congress could not have intended a uniform status for the entire right of way, because it doubtless knew that any route which might be selected would here and there traverse private holdings, and that therefore the continuity of the grant would be broken. True, absolute continuity was not to be expected, but when we consider the vast stretch of public domain over which the road would pass, and the rarity and insignificance of the private holdings, it may readily be concluded that these interruptions were thought to be negligible, as affecting the value of the right of way as a whole.

"In support of their position, appellants invoke the general rule that, where two titles relate back to the same point of time, there is a merger, and the greater title prevails from the beginning. It is conceded, however, that this doctrine, if the appellants' application of it be correct, would here come into conflict with the controlling principle that the granting act must be construed in such a manner as to give effect to the legislative intent, provided it be found that Congress intended that the right of way throughout should be held subject to the conditions and limitations declared in the Townsend case. Such, we have no hesitation in finding, was the intent of Congress, and therefore it is not deemed necessary to consider the correctness of the assumptions upon which appellants' application of the rule necessarily rests, namely, that, as the terms are used in the learning upon the law of merger, the estate of the grant-in-aid is greater than that of the right of way grant, and that they both date from the same point of time." (See, also, *Southern Pac. Co.* v. *City of Reno*, 257 Fed. 450; *Mercantile Trust Co.* v. *Atlantic & Pacific R. Co.*, 63 Fed. 910.)

The nature of the title to a railroad right of way acquired under section two of the act of congress of July 2, 1864, *supra*, was before the Supreme Court of the United States in the case of *Northern Pac. Ry. Co.* v. *Townsend*, 190 U. S. 267 [23 Sup. Ct. 671, 47 L. Ed. 1044], where it was said:

"Following decisions of this court construing grants of rights of way similar in tenor to the grant now being considered (*New Mexico* v. *United States Trust Co.*, 172 U. S. 171, 181 [19 Sup. Ct. 128, 43 L. Ed. 407, 410] ; *St. Joseph & Denver C. R. Co.* v. *Baldwin*, 103 U. S. 426 [26 L. Ed. 578]), it must be held that the fee passed by the grant made in section 2 of the act of July 2, 1864. But, although there was a present grant, it was yet subject to conditions expressly stated in the act, and also (to quote the language of the Baldwin case) 'to those necessarily implied, such as that the road shall be . . . used for the purposes designed'. Manifestly, the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose,—one which negated the existence of the power to voluntarily alienate the right of way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." (See, also, *Territory of New Mexico* v. *United States Trust Co.*, 172 U. S. 171 [19 Sup. Ct. 128, 43 L. Ed. 407].)

From the foregoing authorities we conclude that defendant acquired title to its right of way and station grounds in the city of Tulare under section two of the act of congress of July 27, 1866; that its title was of "limited fee, made on an implied condition of reverter"; that the subsequent patent to the two odd-numbered sections added nothing to the estate it held in the right of way and station grounds. In other words, the effect of the patent would have been the same had it expressly reserved the right of way and station grounds, or so much of them as were in the two sections, from the property granted. It is also clear that the land described in the patent, not within the right of way and station grounds, was held by defendant in fee simple with all the rights of private ownership.

It is clear that the same property cannot be held in fee simple and in limited fee by the same owner at the same time. The right of way and station grounds were held under the congressional grant contained in section two of the act of July 27, 1866. The balance of the odd-numbered sections was held in fee simple under the patent. It follows that the finding which we have quoted, numbered "IV", and which in effect finds that both of the properties are held by defendant under the patent and also under the congressional grant cannot be supported. The finding is inconsistent, conflicting, and contrary to law.

About the only evidence in the record concerning the boundaries of the station grounds was given by a witness for defendant, who testified as follows:

"Q. In other words, through the city of Tulare the station reservation is 400 feet in width? A. 440 feet in width. Q. 440 feet in width, and immediately south of the city limits of Tulare, it narrows down to 100 feet? A. Yes, 100 feet in fence, yes. Q. 100 feet in fence. A. Yes. The Court: Well, is the station reservation entirely through the city 440 feet? A. Yes, sir, that is correct, from the north line of the southeast quarter of section three to . . . The Court: It is not 440 feet here, is it? (Showing.) A. Yes, from the west line of 'J' Street to the east line of 'I' Street, 440 feet in width. Mr. Crowe: Q. So that this area here at the north end of town is the same as the area at the south and is the same through the heart of town, but is not shown on this map? A. That is correct. Q. That does narrow down just a little bit when you get past Bush Street on the north? A. Previously an easement had been granted for highway purposes through there. Q. Out of the 440 feet? A. Out of the 440 feet. Q. And now this action seeks to take an additional 20 feet? A. 20 feet, plus a triangle on which would be the north line of Bush Street, into the west line of 'J' Street."

From the foregoing, and from the maps before us, it appears that the station grounds in the city of Tulare extend in a general northwesterly direction from the southern to the northern city limits; that such grounds were four hundred and forty feet in width and are bounded on the east by the west line of "J" Street and on the west by the east line of "I" Street.

The maps introduced by both parties show that all of parcel No. 1 first is outside of the station grounds, and all of parcel No. 1 second is within those grounds. From what we have already said, it follows that all of parcel No. 1 first was owned in fee by defendant, and all of parcel No. 1 second was owned in limited fee with an implied condition of reverter.

The only statement in the record in any manner conflicting with this conclusion is the following:

"The Court: Well, let the objection be overruled. This property, however, was once used, was it, for railroad purposes? Mr. Crowe: There is no evidence of that in the record, if the Court please. The Court: Well, I am asking the question. Wasn't this property once used for shops? A. Many years ago it was, yes." (Referring to parcel No. 1 first.)

It should be observed that the statement is very indefinite as to the time the property was used for shops, presumably railroad shops. The case was tried in June, 1936. "Many years ago" might have referred to a date forty or even fifty or more years before that date. When we refer to the certified copy of the map of 1872 from the United States land office, which plaintiff produced and asked us to consider, we find that the improvements on the station grounds are set forth in considerable detail. We find no reference to any shops, or railroad shops. This map was the foundation of defendant's title to its station grounds to which it acquired title in limited fee with an implied covenant of reverter. Record title in fee to the balance of the odd-numbered sections was acquired under the patent. If defendant subsequently used a portion of the property it owned in fee for railroad shops, such use would not affect its fee title to the land so used. The grant in the patent was absolute in so far as the questions here presented are concerned. A fee title once vested could not be reduced to a limited fee by a subsequent user. The patent did not so provide.

The trial court found that the reasonable market value of the property taken by the improvement described as parcel No. 1 first was $8,000. This finding is supported by evidence and need not be disturbed as that property was owned in fee simple by defendant.

■ A different situation exists as to parcel No. 1 second. The trial court found that the reasonable market value of this property was $2,500 and awarded that sum for that property taken by the public improvement. The court used the wrong measure in fixing the compensation to be paid defendant for the property in parcel No. 1 second, as defendant did not own that property in fee and it was only entitled to compensation for the damage which the use of the property taken by plaintiff would cause to the right of use by defendant. This question was before the court in *City of Los Angeles* v. *Allen,* 32 Cal. App. 553 [163 Pac. 697], where it was said:

"There is an important difference between the extension of a street crossing over a railroad track and a taking for the purpose of constructing a street longitudinally covering a right of way. 'The right to take longitudinally is very different from the mere right to cross, for in the one case the rights of the railway company are materially impaired, while in the other the taking is such that both uses can stand together.' (Elliott on Railroads, 2d ed., sec. 1098. See, also, Elliott on Roads and Streets, 3d ed., sec. 249; Pierce on Railroads, p. 193.) It has been held that when a railroad corporation owns only an easement in the land which it occupies, the imposition of another easement on the same land wholly consistent with the complete and undisturbed enjoyment of the original use, is not a taking of property, and that if there is an interference with the original use, there is a taking only to the extent of such interference. The corporation having the original right is not, when the land is occupied concurrently by another corporation, entitled to recover the value of the land as measured by the most advantageous use to which it could be put. The true measure of damages in each case is the decrease in the value of the use of the land for the first purpose by reason of its being concurrently used for the second purpose. (10 R. C. L., title, 'Eminent Domain', sec. 129, and cases there cited.) . . .

"We concede that a public-service corporation is peculiarly subject to regulation under the police power, and that the action of the city authorities or of state authorities in compelling the defendant railroad company, at its own expense, to alter its railroad structures at any time when the continued maintenance of such structures endangers the pub-

lic safety, will not be a taking of the property in the constitutional sense. But this furnishes no adequate reason why the city in condemning this right of way and applying it to street uses concurrently with the railroad use, should not pay for any diminution in value of the railroad company's reserved rights of use in the property, to the extent that such diminution in value can now be shown to be actually involved as a consequence resulting from the process of subjecting the land to street uses. That it is the purpose and policy of the State of California to allow this just compensation, is indicated by the language of section 1240 of the Code of Civil Procedure, to which we have referred, wherein it is provided that in subjecting property to such concurrent use the court may fix the terms and conditions upon which the property may be so taken. The fixing of those terms and conditions is evidently intended to include the allowance of compensation for the diminution in value to which we have referred.''

It follows that the portion of the findings which fixed the market value of $2,500 for the taking of parcel No. 1 second cannot be sustained. The case must be retried as to that question, evidence based on the proper measure of damage as to that parcel must be received, proper additional findings must be made as to that damage, and judgment to include the award already made for parcel No. 1 first must be entered accordingly.

To escape the foregoing conclusion as to parcel No. 1 first, and to secure a general reversal of the judgment and a retrial of all the issues, plaintiff calls our attention to that portion of the answer which pleads defendant's title to both parcels as acquired under section eighteen (and section two) of the act of congress of July 27, 1866, and that both parcels are part of its right of way and station grounds. It urges that, with this admission in its answer, defendant cannot assert any greater title to either parcel than it acquired under sections two and eighteen of the act of congress. While there is such an allegation in the answer there is also an allegation that defendant held title to both parcels in fee simple.

There is no rule of pleading more firmly established than the one permitting a defendant to set up inconsistent defenses. In 21 California Jurisprudence, page 134, it is said:

"While each defense must be consistent in itself, especially when the pleadings are verified, it is settled that a defendant may set up in his answer defenses which are inconsistent, one with the other, and may offer evidence in support thereof. The rule is the same although the pleadings are verified. A defendant does not waive his rights under one defense by pleading another and inconsistent defense, nor may a defense be disregarded merely because it is inconsistent with some other defense pleaded, since denials, admissions, or allegations in one defense remain unaffected by matter inconsistent therewith in a separate defense. Thus the answer may, in a special defense, admit an allegation previously denied without destroying the effect of the denial, as such admission relates only to the defense in which it is set forth. Likewise, a denial in one defense is not affected or waived by setting up inconsistent affirmative matter in another. The rule that the averment which bears most strongly against the pleader is to be taken as true may not be applied to repugnancy between inconsistent defenses."

It is therefore ordered: (1) That finding number four, heretofore quoted, be stricken from the findings of fact and in lieu thereof the following finding of fact substituted:

"That it is true that the defendant, Southern Pacific Railroad Company, is the owner in fee simple, and by itself and through its lessee, Southern Pacific Company, prior to the commencement of this action, was entitled to and was in possession of the lands described in the pleadings as 'parcel No. 1 first', under a patent from the United States of America dated March 13, 1874, and recorded in the office of the County Recorder of the County of Tulare, State of California, on June 27, 1874, in Liber E of Land Patents at pages 531, 532, and 533; that it is not true that said 'parcel No. 1 first' is or ever has been a part of the right of way or station grounds of defendant or of its lessee. It is true that defendant, Southern Pacific Railroad Company, is the owner in limited fee with a condition of reverter, and by itself and through its lessee, Southern Pacific Company, prior to the commencement of this action, was entitled to and was in possession of the lands described in the pleadings as 'parcel No. 1 second' under a grant from the United States of America as appears in sections two and eighteen of an Act of Congress approved July 27, 1866, and published in volume 14 of the United

States Statutes at page 292 et seq., entitled 'An Act granting lands to aid in the construction of a railroad and telegraph line from the State of Missouri and Arkansas to the Pacific Coast'; that it is true that said parcel No. 1 second was, at the time of the commencement of this action, and always has been, a part of the station grounds of defendant and its said lessee, and was so used; that it is not true that defendant owned said parcel No. 1 second in fee simple or in a greater estate than it received under said sections of said Act of Congress.''

(2) The following is stricken from finding of fact number VIII:

''And that it is true that the reasonable market value of Parcel No. 1 (Second) of said lands, hereinafter particularly described, is Two Thousand Five Hundred Dollars ($2500.00).''

(3) The judgment is reversed with directions to the trial court to:

(a) Retry the issue of the loss or damage occasioned by the taking of the land described in the pleadings as parcel No. 1 second from the station grounds of defendant.

(b) Amend the findings of fact by making a finding of the amount of such loss or damage.

(c) Amend the conclusions of law in accordance with the facts found in such amended findings of fact.

(d) Enter judgment in accordance with such amended findings of fact and conclusions of law.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 11, 1938.