[Civ. No. 15154. First Dist., Div. Two. Jan. 2, 1953.]

CHRISTOPHER RUDOLPH MENDEZ, a Minor, et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY et al., Respondents.

Edward E. Craig and H. J. Rodriguez for Appellants.

Carlson, Collins, Gordon & Bold and Frederick Bold, Jr., for Respondents.

JONES, J. pro tem.—This appeal is from a judgment of nonsuit entered upon the opening statement of plaintiffs' counsel to the jury.

The action is for damages for personal injuries which plaintiff alleges he sustained because the Pacific Gas and Electric Company "carelessly and negligently managed, maintained and controlled" electric wires from their pole to 4720 Mead Street in the city of Richmond, California. It is alleged by the plaintiff that the insulation on said electric wires was allowed to become deteriorated and put in such a state of disrepair that when he grasped them the electricity was permitted to course through his body.

At the commencement of the trial plaintiffs' counsel made the following opening statement to the jury:

"Ladies and Gentlemen of the Jury, you heard what the Judge said about the nature and purpose of an opening statement. My evidence will show to you what happened in this case. It's a very simple tale of a boy and a ball and some bare wires and a fall and some injuries; that's what it amounts to.

"My evidence will show that on September 9th, 1949, someone, I don't know whether it was the plaintiff in this case or someone else, knocked a ball on the roof of the house where the plaintiff was living, which is in the Seaport Housing Facilities; that the Pacific Gas and Electric Company delivers electricity to that housing place; that on this particular occasion the plaintiff, this young boy, went up on the roof to retrieve his ball, or the ball that was knocked up there. When he got up there, he grabbed onto some wires, apparently for support. These wires were electric wires, which delivered electricity into this housing unit. The wires had been allowed to become bare; I mean the ordinary insulation which surrounds the wires had become frayed and the wires bare, and as the boy grabbed the wires they came together, and there was a flash, an electric arc, which, if you don't know it, the electric arc produces ultraviolet rays, the same as the sun. And the burn from an electric arc, whether you're a welder or whether you're a small boy retrieving a ball, or whatever you are, has the same effect upon the system as the sunlight does—prolonged sunlight. It's a momentary flash of rather severe intensity, and it exposes the parts of the person that are exposed to this ultraviolet light which affects the face, the skin, the hands and the eyes. And

when this boy got this flash, naturally he let go and he fell to the ground.

"He sustained a few injuries on account of the fall. As a result of the flash he sustained some eye injuries. He was taken to the Permanente Hospital for treatment. He was treated there by a Doctor Smithburn. Doctor Smithburn has about a month ago, we discovered, left the Permanente Hospital and has gone south. We haven't been able to locate him, so there will be no testimony from Doctor Smithburn. We'll have to rely on the testimony of the boy himself and on the testimony of people who have seen him, and his parents, to prove the injuries.

"Later on, some months later, the boy was taken to an eye specialist, in Oakland, for an examination. The examination revealed that the boy had completely recovered from whatever eye injuries he received, so it would be senseless and useless for us to bring in a doctor to tell you that when he examined the boy there were no injuries.

"And we will then show, by the evidence, that after this flash, the Pacific Gas and Electric Company, with their own equipment, came in and repaired the wires; not only on this one occasion, but on a later occasion they came in with their own equipment and repaired the same wires only a few feet away, where another fire had broken out. With that we will submit the case to you."

At the conclusion of the statement counsel for the defendant company objected to its sufficiency to make out a case against the company, and requested that plaintiffs' counsel make it sufficient by stating that the defendant was under a duty to manage, maintain or control the wires involved which are within the Seaport Housing Project operated by the federal government. This, counsel for plaintiffs declined to do and the defendant then asked the court to take judicial notice of a contract for supplying electricity to the Seaport Housing Project between the United States and the Pacific Gas and Electric Company. By the terms of this contract it is provided that, "The Government shall furnish, construct, own and operate the complete and entire electric distribution system of the development from the points of delivery." It is further provided by the contract that the company shall deliver a 12,000 volt current to "the first pole of the Government's distribution system located approximately 80 feet east of the east line of 47th Street which is also the westerly boundary of the development and approxi-

mately 160 feet south of the south line of Mead Street.'' The contract also states that ''All electricity supplied'' is to ''be measured at said point of delivery or at another mutually satisfactory point adjacent thereto,'' and ''No portion of the electricity supplied . . . shall be resold, except that the Government may sell or otherwise distribute electricity to the tenants of the Development.'' The effect of the contract is to prohibit the company from distributing or selling any of the delivered electricity within the project.

After the contract was called to the attention of the court considerable discussion with counsel ensued as to its effect upon the pleadings and the opening statement. Plaintiffs' counsel was then given an opportunity to modify or add to the statement and to amend his complaint. He declined to do either, and with respect to this opportunity the court said: ''Now, the Court has given counsel an opportunity to supplement his opening statement. The Court has also given counsel an opportunity to amend his pleadings. The counsel has declared that he will stand on matters as they now are, on the opening statement and also the pleadings.'' After this statement the motion for the judgment of nonsuit was granted.

Under the provisions of section 1875 of the Code of Civil Procedure ''Courts take judicial notice of the following facts: . . .

''3. Public and private acts of the legislative, executive and judicial departments . . . of the United States . . .'' The trial court was bound to notice judicially the provisions of the contract (*People* v. *Tulare Packing Co.*, 25 Cal.App.2d 717 [78 P.2d 763]; *Livermore* v. *Beal*, 18 Cal.App.2d 535 [64 P.2d 987]; *Sheehan* v. *Vedder*, 108 Cal.App. 419 [292 P. 175]) and in considering the complaint to read the pleading as if the contract were set out in full therein. (*Chavez* v. *Times-Mirror Co.*, 185 Cal. 20, 23 [195 P. 666]; *Livermore* v. *Beal, supra*, 18 Cal.App.2d 535; *Sheehan* v. *Vedder, supra*, 108 Cal.App. 419.) When so considered the complaint in effect pleaded that the federal government constructed, owned and operated the complete and entire electric distribution system of the development project beyond the designated delivery point, and that the government was supplying electricity to the house at 4720 Mead Street at the time of the accident.

No attempt is made in the opening statement to charge the Pacific Gas and Electric Company with the ownership, or duty to maintain the distributing system, or with any right or obligation to distribute the power within the

project. The most that the statement charges is that the company delivers electricity "to that housing place," and "the Pacific Gas and Electric Company, with their own equipment came in and repaired the wires." Nor is there any charge in the pleading or in the statement that the company was obligated by subsequent agreement, or otherwise to see that the wires and appliances furnished and installed by the United States were to be maintained in a safe condition by the Pacific Gas and Electric Company. The failure to charge a duty to maintain the line in a safe condition renders both the pleading and the statement fatally defective.

The rule is not disputed that the court may grant a motion for nonsuit on the opening statement where it clearly appears from all the facts alleged in the complaint and stated by counsel and all the favorable inferences to be deduced therefrom that no cause of action exists. (Code Civ. Proc., § 581c; *Bias* v. *Reed*, 169 Cal. 33 [145 P. 516]; *Wrightson* v. *Dougherty*, 5 Cal.2d 257 [54 P.2d 13]; *Paul* v. *Layne & Bowler Corp.*, 9 Cal.2d 561 [71 P.2d 817]; *Davis* v. *West Shore Co.*, 55 Cal.App.2d 220 [130 P.2d 459]; *Porter* v. *Fiske*, 74 Cal.App.2d 332 [171 P.2d 971].)

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.