[L. A. No. 2040.   In Bank.—August 25, 1909.]

BROOKSHIRE OIL COMPANY, Appellant, v. CASMALIA
RANCH OIL AND DEVELOPMENT COMPANY,
Defendant and Appellant; CHRISTOPHER C. MORE-
HOUSE et al., Defendants and Respondents.

LEASE OF OIL LANDS—EXCLUSIVE RIGHT TO DEVELOP—RIGHT TO LAY AND
OPERATE PIPE-LINES—CONSTRUCTION OF AGREEMENT.—By the so-
called lease in question, the lessor granted to the lessees, for a
stated term, the exclusive right to produce petroleum and kindred
substances ·from a large tract of land, with the exclusive right to
drill and operate oil and gas wells, to lay and operate pipe, tele-
graph, and telephone lines, the necessary right of way over the
premises, the use of enough land on which to preserve the products
and erect buildings, the free use of water and wood, if found on
the premises, until oil is found, with the right at any time to annul
the lease by failing to comply with its terms, and to remove all
machinery and fixtures. It further provided, that should the lessees
find a paying production of oil or gas on the land during the term,
the lessor would extend the lease, upon the same terms, from year
to year, so long as said production continues. In consideration
thereof, the lessees agreed to use and occupy only so much of the
land as may be necessary for the purposes granted, to commence
operations on the land leased within a certain time, and to pay the
lessor a stated royalty of all oil and gas produced. *Held,* that the
instrument did not vest in the lessees any present title in the land,
but a mere right to do certain things and to take certain substances
therefrom, and that no title to such substances passed from the
original owner until they were severed from the realty.

ID.—LIMITED RIGHT OF POSSESSION.—The right of possession under such
lease is limited to the possession necessary to enable the lessees to
search for the minerals they are allowed to take, until such minerals
are found, and thereafter to the. possession of only the part re-
quired for the convenient operation of the works they may construct
and use for the extraction and removal of the minerals.

ID.—LIMITATION ON RIGHT TO LAY PIPE.—Under such lease, it was not
the intention to grant a general right to lay and operate pipe-lines,
or to erect and maintain telephone or telegraph lines for general
purposes over the entire tract; it was intended merely to give suf-
ficient rights of that character to enable the lessees to carry out
the main object of producing oil and gas that might be found, and
to make explorations to find these substances.

ID.—SUBSEQUENT LICENSE TO LAY PIPE GRANTED TO THIRD PERSON.—
Such right of the lessees would be paramount to that of the lessor,
or of any person claiming under him by subsequent grant or license,
to the extent that if such subsequent line came in conflict with any

line which the lessees found it necessary or convenient to lay and operate for their purposes, the lessor, or those claiming under him, must yield supremacy to the lessees and avoid any interference with the operations under the lease. If, however, a pipe-line laid across the land by a third person, with the permission of the owner, in no way affects the lessees in their explorations for oil or other minerals, or in their operations in producing and removing the same, the lessees have no right to complain of such pipe-line nor to interfere with its maintenance and operation.

ID.—EASEMENT—LESSEE CANNOT INTERFERE WITH SUBSEQUENT LICENSEE. —So far as the pipe-lines are concerned the agreement grants an easement only in general terms, and the lessee's right. of possession for that purpose is limited to the part of the land which may be required as a right of way for such pipe-lines as it does actually lay, and it has no right of possession at all for that purpose until it actually begins the laying of such line. In the mean time, the lessor or his grantee or licensee has the right of possession and dominion over the land and may use it for any purpose not inconsistent with the rights granted by the agreement. In view of the nature of the operations to be carried on by the lessees, .the grant would not be exhausted by the location of one pipe-line, but they may lay as many lines as they need from time to time in their operations.

ID.—ADVERSE USE BY SUBSEQUENT LICENSEE.—The use of a pipe-line by a subsequent licensee of the lessor over a part of the land would not become adverse to the lessees, until, in the course of their operations, they began to use the part of the land through which the pipe-line ran, in a manner incompatible with the maintenance of the pipe-line.

ID.—MEASURE OF DAMAGES FOR DESTRUCTION OF PIPE-LINE.—In an action against the lessees to recover damages for the unauthorized destruction of a pipe-line constructed and operated by a subsequent licensee of the lessor, the plaintiff is entitled to recover, among other elements of damage, the value of the pipe destroyed, the value of the oil actually lost to the plaintiff by reason of its inability to market it during the time its pipe service was interrupted, and any loss due to a change in the market value of the oil that it was prevented from marketing during the interruption caused by the destruction of the pipe.

ID.—LOSS OF OIL—DELAY IN ABILITY TO MARKET.—The fact that the plaintiff, by reason of the destruction of its pipe-line, was prevented for a period of forty-seven days from transporting oil of a certain quantity and value from its wells to its customers, would not necessarily sustain the conclusion that such quantity of oil was lost to it, and that it was damaged to the extent of its value.

APPEALS from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

Richards & Carrier, and McD. R. Venable, for Appellant.

Wm. H. Chapman, and H. C. Booth, for Respondent.

SHAW, J.—Three separate appeals are presented upon the same transcript; an appeal by the plaintiff from the parts of the judgment consisting of paragraphs numbered two and three; an appeal by the plaintiff from an order denying its motion for a new trial, and an appeal by the defendant company, which for brevity we will call the Casmalia Oil Company, from the part of the judgment consisting of paragraph numbered one. The defendant's appeal was taken more than sixty days after the entry of the judgment and it does not present the question of the sufficiency of the evidence to support the part appealed from. The non-appealing defendants are officers and agents of the defendant corporation, and as the plaintiff urges nothing against the judgment in their favor, their rights need not be further considered.

The object of the action was to recover damages alleged to have been casued by the acts of the defendants in tearing up about four thousand feet of pipe-line maintained by the plaintiff over a tract of land owned by one Juan B. Arellanes and in destroying the pipe, and to enjoin the defendants from preventing the construction and maintenance of said pipe-line by the plaintiff. The defendant company, under an oil lease executed by Arellanes in 1899, claims the exclusive right to maintain pipe-lines over the land. The plaintiff claims the right to maintain its particular pipe-line over the land by virtue of a parol license from Arellanes to lay and maintain such pipe-line, given in January, 1905, and the subsequent construction thereof with his consent. The principal question involved is, whether the lease, or contract, of Arellanes to the Casmalia Oil Company's assignors gave the exclusive right to maintain any pipe-line over all parts of the land and the right to prevent any other person or persons from laying or maintaining any such pipe-line for any purpose, or whether it gave them only the right to lay and maintain such pipe-lines as they might find necessary in the process of extracting and transporting the oil produced by them under the contract.

The material parts of the lease of Arellanes to Morehouse and his associates, who transferred the same to the Casmalia Oil Company, are as follows:—

"The first party (Arellanes) hereby grants unto the second parties the sole right to produce petroleum, asphaltum and other hydrocarbon substances, and natural gas, from the following named tract of land (describing about 5000 acres of land). Specifically granting to the second parties, for and during the term of ten years from this date (November 25, 1899,) the exclusive right to drill and operate oil and gas wells; to lay and operate pipe-lines; telegraph and telephone lines; the necessary right of way over the premises; the use of enough land on which to preserve the products and erect such buildings as they may desire; the free use of water and wood, if found on the premises, until oil is found; with the right at any time to annul this lease by failing to comply with its terms; and to remove all machinery and fixtures which they may have placed thereon; and should the second parties find a paying production of oil or gas on said land during said term, then first party agrees to extend this lease upon the same terms and conditions as herein provided for, from year to year, so long as said production continues. In consideration for which the second parties agree as follows: . . . Second—To use and occupy only so much of said land as may be necessary for purposes herein granted. Third—to commence operations on land herein leased, or other lands of the vicinity, within one year from this date. . . . Fifth—To pay to said party of the first part one tenth royalty of all oil and gas produced on said leased land. . . . Also agreeing to use no water that is necessary for his stock."

Under the authority of said instrument, the Casmalia Oil Company within three months after its execution, entered upon the land and began drilling for oil thereon and has ever since continued the work of exploration for oil thereon, but has not discovered oil or any other substance in marketable quantities. It has not laid any pipe-line over or upon the land, nor has it made any plans for that purpose. The plaintiff offered evidence tending to show that the pipe-line constructed by it was laid in a part of the land where it would not interfere with any pipe-line that the Casmalia Oil Company would have to lay to conduct oil from the land to any point of ship-

ment or use, but upon the objection of the said defendant the evidence was excluded.

This instrument does not vest in the so-called lessees any present title in the land. It grants only the right to do certain things thereon and to take certain mineral substances therefrom, and no title to such substances passes from the original owner until the same is severed from the realty. In regard to such agreements it is said: "The title is inchoate and for purposes of exploration only, until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract." (*Venture Oil Co.* v. *Fretts,* 152 Pa. St. 451, 460, [25 Atl. 732] ; *Steelsmith* v. *Gartlan,* 45 W. Va. 27, 34, [29 S. E. 978] ; *Lowther Oil Co.* v. *Miller etc. Co.,* 53 W. Va. 501, 97 Am. St. Rep. 1027, 44 S. E. 433] ; *Huggins* v. *Daley,* 99 Fed. 608, [40 C. C. A. 12] ; *Gadbury* v. *Ohio etc. Gas Co.,* 162 Ind. 14, [67 N. E. 261] ; *Eaton v. Alleghany Gas Co.,* 122 N. Y. 417, [25 N. E. 981] ; *Funk* v. *Haldeman,* 53 Pa. St. 242; *Union etc. Co.* v. *Bliven etc. Co.,* 72 Pa. St. 173; *Grubbs* v. *Grubbs,* 74 Pa. St. 33; Thornton on Oil, sec. 53.)

With regard to possession of the land, the agreement gives it for special purposes only, and so far as may be necessary and convenient for such purposes and no further. The right of possession is limited to the possession necessary to enable the lessees to search for the minerals they are allowed to take, until such minerals are found, and thereafter to the possession of only the part required for the convenient operation of the works they may construct and use for the extraction and removal of the minerals. (*Funk* v. *Haldeman,* 53 Pa. St. 242.) The right to lay and operate pipe-lines is stated in general terms and is not expressly limited to such pipe-lines as should be found necessary for the production and removal of the oil and gas, and so, for that matter, is the right to erect and operate telephone and telegraph lines. These general words, however, do not necessarily confer a general right for all purposes. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, sec. 1648.) "Particular clauses of a contract are subordinate to its general in-

tent." (Civ. Code, sec. 1650.) "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." (Civ. Code, sec. 1653.) With these rules of interpretation in mind, and considering the main object of the agreement as well as the attendant provisions, it is plain that there was no intention to grant a general right to lay and operate pipe-lines, or to erect and maintain telephone or telegraph lines for general purposes over the entire tract, and that the design was to give only sufficient rights of that character to enable the lessees to carry out the main object of producing the oil and gas that might be found, and to make explorations to find these substances. The "*necessary* right of way over the premises" is given, and the lessees are bound to "use and occupy *only* so much of said land *as may be necessary for purposes herein granted.*" Their right to operate telegraph or telephone lines over the land and their right to lay and use pipe-lines as well, would no doubt be paramount to that of the lessor, or of any person claiming under him by subsequent grant or license, to the extent that if such subsequent line came in conflict with any line which the lessees found it necessary or convenient to lay and operate for the purposes stated, the lessor, or those claiming under him, must yield supremacy to the lessees and avoid any interference with the operations under the lease. But the lessees' right goes no further than this, and when it is found that any pipe-line laid across the land with the permission of Arellanes by a third person does not in any way affect the lessees in their explorations for oil or other minerals, or in their operations in producing and removing the same, the lessees have no right to complain of such pipe-line and no right to interfere with its maintenance and operation.

The Casmalia Oil Company does not claim that the pipe-line of the plaintiff interferes at all with its operations for the discovery of oil on the premises. The defense is founded wholly upon the theory that by the agreement with Arellanes the Casmalia Oil Company has the sole right to lay pipe-lines in the land, for any or all purposes and in all parts of it, and that any pipe-line laid in the land is a trespass on its right. The theory is that the agreement creates some sort of an estate in the land for pipe-line purposes, that it severs from the fee all right to use the land for that purpose and vests that use

in the lessees and their successors, and that it cannot be used for that purpose by any other person without invading that estate. The theory is untenable. The right given is limited to the use of the land for the purpose of producing the minerals. Any use by the owner, or others operating under him, which does not affect the search for and production of the minerals, is lawful, and the defendants have no right to interfere with such use, except when in the actual exercise of the lessees' rights under the lease, the other occupation or use shall be found adverse, injurious, or conflicting.

So far as the pipe-lines are concerned the agreement grants an easement only, and this is done in general terms. The case is similar to that of *Winslow* v. *Vallejo*, 148 Cal. 723, [113 Am. St. Rep. 349, 84 Pac. 191]. There the grant was of a right of way "for any water-pipes or mains which may be laid by the city of Vallejo." The court quoted from *Jennsion* v. *Walker*, 11 Gray, 423, the statement that "where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire a right to use the servient tenement without limitation as to the place or mode in which the easement is to be enjoyed." A similar principle applies here. The Casmalia Oil Company has not the right to take and hold possession of all the land in virtue of the grant of the right to lay and operate pipe-lines over all of it. Its right of possession for that purpose is limited to the part of the land which may be required as a right of way for such pipe-lines as it does actually lay, and it has no right of possession at all for that purpose until it actually begins the laying of such line. In the mean time the lessor has the right of possession and dominion over the land and may use it for any purpose not inconsistent with the rights granted by the agreement. The lessor's grantee or licensee has the same right. In view of the nature of the operations to be carried on by the lessees, the grant would not be exhausted by the location of one pipe-line, as is generally the case in grants of an unlocated easement for a single purpose, but the company may lay as many lines as it may need from time to time in its operations. With that qualification, its rights are no greater than in grants similar to that considered in *Winslow* v. *Vallejo*.

The court finds that the line laid by the plaintiff was over a part of the land which was not occupied, used, or operated upon by the Casmalia company under the lease. The evidence excluded would have shown that it was situated in a part of the land which, in all probability, the Casmalia company would never have occasion to use for a pipe-line, or for any other purpose. The part of the judgment from which the plaintiff appeals enjoins the plaintiff from maintaining any pipe-line over any part of the land and commanded it to remove the pipe already laid therein. There is a finding that the maintenance of the pipe-line over the land by the plaintiff would in time ripen into a prescriptive right to keep it there. There is, however, no finding that the plaintiff claimed adversely to the defendants' actual rights under the lease, nor is there any allegation to that effect. And there is no evidence of any such claim. The fact is that the plaintiff was operating oil wells on premises about a mile east of the Arellanes tract and that, in order to market its oil, it laid a pipe-line from its wells westerly over the northerly corner of that tract, to a railroad station some five miles away, solely to transport its own oil, and not for any purpose connected with the Arellanes tract of land. Under these circumstances, the use by the plaintiff was not adverse, and would not become adverse, until the Casmalia company, in the course of its operations, began to use the part of the land through which the pipe-line ran, in a manner incompatible with the maintenance of the pipe-line. The judgment enjoining the plaintiff cannot be justified on the theory that it was necessary in order to prevent the use by the plaintiff from creating a prescriptive right. It cannot be sustained on the theory that the lease gave the lessees the right to maintain exclusive possession prior to the laying of any pipe-line nor on the ground that the plaintiff's pipe-line was an obstruction to the free use by the Casmalia company of its rights under the lease. There is no theory upon which it can be supported. The plaintiff has the right to lay and maintain the pipe-line by permission of Arellanes, so long as it does not interfere with the actual operations of the defendant under the lease.

The injunction was granted upon the cross-complaint of the Casmalia Oil Company. It does not show that the plaintiff was invading its rights, nor that the pipe-line had caused

it any legal damage.    The demurrer to the cross-complaint should have been sustained.

The complaint alleged that the damage caused by the destruction of the pipe taken up was twenty-five hundred dollars.    The court found this damage to be $1232, and that it was not necessary for the defendants to destroy the pipe in order to preserve the rights which the court concluded the Casmalia company had under the lease, and it gave judgment for the above sum against the Casmalia company, but in favor of the other defendants, who, it seems, did not participate in the wrong.

The complaint also alleged that by reason of the destruction of the pipe-line the plaintiff was damaged in the sum of five thousand dollars by "the loss incident to the conduct of oil from the property of plaintiff to said railway station."    The plaintiff rebuilt its pipe-line after its destruction by the defendant company, but it was delayed in the use thereof for the period of forty-seven days by reason of said destruction.    In the mean time it was prevented from transporting its oil from its wells to its customers, except by other means than the pipe-line, and it was thereby prevented from marketing, during that period, oil of the value of $3,151.24.    A special issue was submitted to a jury and an advisory verdict rendered fixing this amount, which, however, the court refused to adopt, and it made no finding on the subject.    We do not think it would necessarily follow that the plaintiff would be damaged to the extent of the value of the oil which it was thus prevented, for a short time, from delivering.    It was not deprived of the oil, and there is nothing to show that the oil was not as valuable afterwards as before, nor that any of it was lost or destroyed by reason of the interruption.    There was an offer of evidence tending to show that a flowing well on adjacent land, and near to the oil wells of the plaintiff, was, during that time, spouting large quantities of oil from the same stratum, and that the effect of this flow was to take oil from the part of the stratum which belonged to plaintiff, and that by reason of the delay aforesaid, during which the plaintiff was compelled to cap its wells, some of the plaintiff's oil was drawn off to the adjoining land and lost to the plaintiff.    This evidence was excluded by the court.    We are by no means certain that any reliable proof of such a loss could

be made. It must be to a great extent a matter of conjecture. We can only say in regard to it, that if it should appear that loss actually occurred from that cause, it would be a legitimate element of damage. It may also be observed that if there was a change in the market value, of such a character that the plaintiff, when it became able, by the rebuilding of its pipe-line, to market the oil which it was prevented from marketing during the interruption caused by the destruction of the pipe, could not and did not obtain as high a price for it as it would have obtained had it been marketed during the period of interruption, the difference in the price would be a loss which the plaintiff could recover as damages for the unlawful act of the defendant company.

This disposes of all the points presented by the plaintiff in support of its appeals. It follows from what we have said that the judgment granting the injunction against plaintiff, and the order denying a new trial, were erroneous.

The appeal of the defendant company is from the part of the judgment giving damages to the plaintiff. The only point made in support of that appeal is that the defendant was justified in destroying the pipe as the only means of preventing the rebuilding of the pipe-line. From what we have heretofore said in discussing the plaintiff's appeals, it is clear that the point is without merit.

There does not seem to be any necessity for a new trial of the case so far as the damages from the destruction of the pipe is concerned. The plaintiff is satisfied with the award, and the objections of the defendant thereto are unfounded. That part of the judgment may be allowed to stand. The new trial will be confined to the other issues. We presume the views we have stated will dispose of the defendants' claim to an injunction. The evidence given in support of the plaintiff's additional claim for damages would not sustain a judgment. Other evidence may be adduced upon a new trial, however, and we cannot say that the errors in excluding evidence were without substantial prejudice to plaintiff's rights.

The parts of the judgment in favor of plaintiff against the Casmalia Ranch Oil and Development Company for $1232 and costs and in favor of the defendants other than the said company, are affirmed. In all other particulars the judgment is reversed. The order denying a new trial is reversed, except

as to the issue of damages for the destruction of the pipe of plaintiff and the issue as to the liability of the natural persons defendant, and the cause is remanded for a new trial upon all the other issues, but the judgment for damages is to remain unaffected by the subsequent proceedings upon the new trial.

Angellotti, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.