[Civ. No. 2265. Fourth Appellate District.—May 18, 1939.]

MANUEL PIMENTEL, Respondent, v. THE HALL-BAKER COMPANY (a Corporation), Appellant.

Leonard R. Seaman for Appellant.

Martin J. Weil, F. F. Thomas, Jr., William E. Wright and McCutchen, Olney, Mannon & Greene, as *Amici Curiae*, on Behalf of Appellant.

Siemon & Claflin for Respondent.

MARKS, J.—This is an action to quiet title to land in Kern County. The complaint is in the form usual in such actions. Defendant, in its answer to the complaint, admitted plaintiff's title and right to possession subject to defendant's interest therein and right to possession thereof, of as much as was conveniently necessary for its operations, under an oil lease. The oil lease was executed by the parties on December 15, 1936. It was attached to and made a part of the answer. In a separate defense defendant pleaded its title and right to possession under the lease and alleged it had "fully complied with all the terms, conditions and covenants contained in said lease by it to be kept and performed".

Plaintiff moved for judgment on the pleadings and the motion was granted. Defendant has appealed from the judgment which was thereafter entered.

The oil lease was executed for the expressed consideration of ten dollars and "other valuable considerations". It granted to the lessee the right of possession and the right "to drill for, produce, extract, take and remove oil, gas, asphaltum and other hydrocarbons (and water without cost

for its operations) from, and to store the same upon, said land . . . for a term of twenty (20) years from and after the date hereof and so long thereafter as oil or gas, or casinghead gas, or other hydrocarbon substances, or either or any of them, is produced therefrom". A one-eighth royalty to the lessor was provided in the lease.

The lessee agreed to commence drilling operations within five years from the date of the lease. If such operations were not commenced within one year (by December 15, 1937), the lessee agreed to pay the lessor yearly, in advance, and until drilling had been commenced, a rental of one dollar per acre. The lease also provided that "No implied covenant shall be read into this lease requiring the lessee to drill or to continue drilling on said land, or fixing the measure of diligence therefor. The lessee may elect not to commence or prosecute the drilling of a well on said land as above provided, and thereupon this lease shall terminate." The lease also contained the usual quitclaim clause permitting the lessee to quitclaim all or any portion of the leased property to the lessor and thereby be released from all or a proportionate part of its drilling obligations, depending on the amount of land quitclaimed.

The lease also contained the following provision: "Upon the violation of any of the terms or conditions of this lease by the Lessee and the failure to begin to remedy the same within ninety days after written notice from the Lessor so to do, then, at the option of the Lessor, this lease shall forthwith cease and terminate, and all rights of the Lessee in and to said land be at an end, . . . "

Plaintiff urges that the judgment may be supported by the allegations of defendant's second separate defense, wherein it is alleged that the lessee has performed all of the obligations of the lease resting upon it. It is urged that from this allegation we must presume one of the following situations: That defendant has quitclaimed the property to plaintiff; that it has performed all of its drilling obligations and has removed all hydrocarbons from the property; that it has otherwise terminated its interest in the leased property.

If, for the purpose of argument, we assume this contention to be sound, it cannot support the judgment. This allegation appears in the second separate defense. The lease is

made a part of both defenses. The first defense asserts title and right of possession under the lease. A defendant is permitted to plead inconsistent defenses. If one separate defense fails to state facts sufficient to constitute a defense, a judgment on the pleadings cannot be supported where, as here, another separate defense is sufficient to put the parties on their proof.

Further, it is clear that in the second defense defendant is asserting title to and right of possession of the leased property and is not disclaiming its rights in it. The lease is made a part of that defense. As far as the pleadings show, the only past due obligation of defendant at the time the complaint was filed on January 4, 1938, was payment of the rental due on December 15, 1937. Failure to pay that rental was not then a ground of forfeiture of the lease as the ninety days after notice of breach of a condition or obligation of the lease (which time was given defendant to remedy its default) could not have expired when the complaint was filed.

Where a cause of action or defense is based upon a written contract, which is made a part of a pleading, the terms appearing on the face of the contract "cannot be changed by any mere matter of averment in the pleading". (*Stanton* v. *Singleton,* 126 Cal. 657 [59 Pac. 146, 47 L. R. A. 334].) If any such construction as that contended for by plaintiff could be put on the allegation of the second separate defense, that allegation is not controlling because it is contrary to clear terms appearing on the face of the lease.

Further, we do not believe the language of the pleader is subject to any such interpretation. It is clear from the second separate defense that defendant was attempting to plead its title to, and right to possession of the property under what it maintained was a valid and existing contract and was not attempting to allege facts that would show surrender of the property or termination of the lease.

It is admitted that the lease is supported by sufficient consideration. It is contended that as the obligations of the lease are not mutual, and as it cannot be specifically enforced because of lack of mutuality of remedies, it can furnish no defense to plaintiff's action to quiet title.

It must be admitted that the lease lacks mutuality of remedies because the lessor cannot enforce the drilling

obligations of the lessee. It has been consistently held that such a lease cannot be specifically enforced. (*Dabney* v. *Key,* 57 Cal. App. 762 [207 Pac. 921]; *Sheehan* v. *Vedder,* 108 Cal. App. 419 [292 Pac. 175]; *Moore* v. *Heron,* 108 Cal. App. 705 [292 Pac. 136]; *Carlisle* v. *Lady,* 109 Cal. App. 567 [293 Pac. 686]; *George* v. *Weston,* 26 Cal. App. (2d) 256 [79 Pac. (2d) 110].)

It has also been broadly stated that a contract which lacks mutuality of remedies furnishes no defense to an action to quiet title by an owner against another claiming an interest in property under such a contract. (*Jolliffe* v. *Steele,* 9 Cal. App. 212 [98 Pac. 544]; *Crane* v. *Roach,* 29 Cal. App. 584 [156 Pac. 375]; *Archer* v. *Miller,* 73 Cal. App. 678 [239 Pac. 92]; *Hedden* v. *Waldeck,* 89 Cal. App. 494 [265 Pac. 344]; *Sheehan* v. *Vedder, supra.*)

Speaking generally, and until 1935, the foregoing rules have been considered controlling when applied to an oil lease containing a quitclaim clause similar to the one in question here under which the lessee assumed no present enforceable obligation to drill for oil on the leased property. Up to that time there had been no definite and complete inquiry into the nature of the estate acquired by the lessee under such a lease.

In *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871], the Supreme Court had occasion to carefully consider this question and said:

"Giving full weight to this statement of the nature of the landowner's rights in oil and gas, we are of the view that an operating lessee under a lease for a term of years, or for a term of years and so long as oil shall be produced in paying quantities, has an interest or estate in real property in the nature of a *profit à prendre,* which is an incorporeal hereditament, . . .

"Under the usual oil and gas lease the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The rights of the lessee present a clear case of a *profit à prendre* in gross, a right to remove a part of the substance of the land. If the oil and gas lessee is not granted exclusive possession of the surface by the terms of the lease, he has nevertheless a right to such possession as is necessary and convenient for the exercise of the profit, which, in fact, may preclude any other surface possession.

This *profit à prendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in the land, which is a chattel real if it is to endure for years.''

The case of *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal. (2d) 128 [43 Pac. (2d) 797], is to the same effect.

The same question was before the Supreme Court in the case of *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637 [52 Pac. (2d) 237], where it was said:

''The *profit à prendre,* whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real, which is nevertheless an estate in real property, although not real property, or real estate. (*Callahan* v. *Martin, supra,* pp. 506, 507.) Where it is unlimited in duration, it is a freehold interest, an estate in fee, and real property or real estate. Thus, although the oil and gas in place doctrine is rejected, interests in oil rights which are estates in real property may be granted separate and apart from a grant of surface title. The grantee of the profit has a right to such possession of the surface as is necessary and convenient for the exercise of the profit, but he has no general estate in the surface.''

A further consideration of the interest vested in the lessee by an oil lease is found in *Dabney* v. *Edwards,* 5 Cal. (2d) 1, at page 11 [53 Pac. (2d) 962, 103 A. L. R. 822], where it is said:

''Although we are in accord with the conclusion of the District Court of Appeal holding that the two leases which provide for a definite term of years were not included within the term, 'real estate', we are of the opinion that the two leases which provide in addition to the definite fixed term specified that the leases are to continue 'so long thereafter as oil or gas or either of said substances is produced therefrom in quantities sufficient to pay to pump, or otherwise to secure and save . . . ' are included in the term, 'real estate'. It follows logically that if the legal interest created by oil and gas leases which provide for a definite term of years, being classified as estates for years at common law, are deemed to be personal property and are therefore excluded from the definition of 'real estate' as used in subdivision 5 of section 1624 of the Civil Code, that the legal interest created by oil and gas leases which provide for a term of indefinite and uncertain duration, which under the

common law are classified as freehold estates in the nature of a qualified or determinable fee, must be deemed to be real property and therefore included in the definition of real estate as used in said section.''

These decisions by the Supreme Court have been followed in *Scheel* v. *Harr*, 27 Cal. App. (2d) 345 [80 Pac. (2d) 1035], *Morrow* v. *Coast Land Co.*, 29 Cal. App. (2d) 92 [84 Pac. (2d) 301], and *Lever* v. *Smith*, 30 Cal. App. (2d) 667 [87 Pac. (2d) 66].

Thus we find the following rules established by decisions in California: (1) Where, as is usual, the obligations of an oil lease are not mutual and reciprocal and there is no mutuality of remedies, an action for specific performance cannot be maintained by one party against another. (2) Where an oil lease is supported by a sufficient consideration and is for an indefinite term, that is for a period of years and as long thereafter as oil or other hydrocarbons may be produced from the leased property, there is immediately vested in the lessee an interest in the leased land. This interest is conveyed to the lessee, is vested by the lease, and is *real estate*.

The description of the lessee's interest as found in *Brookshire Oil Co.* v. *Casmalia etc. Co.*, 156 Cal. 211, at page 215 [103 Pac. 927], may no longer be considered correct. The rule that a contract which lacks mutuality of remedies cannot be specifically enforced is too well founded in reason and supported by authority to be questioned. We need not question it here.

There remains for consideration the effect on this case of that rule which, as we have already observed, has been broadly stated as depriving a lessee of a defense against an action to quiet title by the landowner where the lease cannot be specifically enforced by reason of lack of mutuality of remedies.

*Jolliffe* v. *Steele, supra*, was an action to quiet title. The defendant asserted an interest in the land under contract ''to render personal services of an indefinite and uncertain character'' which contract could not be specifically enforced. The District Court of Appeal announced and applied the rule we are considering. It appears from the opinion that the contract was without consideration and had been re-

voked before the action was filed which amply supported the judgment quieting plaintiff's title.

The case of *Crane* v. *Roach, supra,* was also an action to quiet title against a contract that could not be specifically enforced and which the court held was no defense to the action. It there appears that the defendant had defaulted in performing his obligations under the contract. The same is true in the cases of *Archer* v. *Miller, supra, Sheehan* v. *Vedder, supra,* and *Carlisle* v. *Lady, supra.*

The cases of *Dabney* v. *Key, supra,* and *George* v. *Weston, supra,* were actions for specific performance and did not involve the question of a defense by a lessee to an action to quiet title. From the facts of those cases it appears that the contracts relied upon could have presented no defense to actions to quiet title for reasons with which we are not concerned here.

The case of *Hedden* v. *Waldeck, supra,* applied the rule to a cause of action which had some of the characteristics of an action to quiet title. While the actual facts of the case are difficult to gather from the opinion, it would appear that there had been at least a partial failure of consideration for the contract. (See *Waldeck* v. *Hedden,* 89 Cal. App. 485 [265 Pac. 340].)

The cases of *Callahan* v. *Martin, supra,* and *Dabney-Johnston Oil Corp.* v. *Walden, supra,* were suits to quiet each landowner's title against an assignee of a fractional interest of the landowner's royalty under an oil lease. The Supreme Court held that each assignee held an estate in the land and that the actions to quiet title against such interest could not prevail.

The facts appearing in *Scheel* v. *Harr, supra,* cannot be distinguished from those of the instant case. It was an action to quiet title against the assignee of an oil lease. Except as to spudding in the well, the instrument provided that the owner must give the lessee sixty days' notice of default before the lease could be terminated. No such notice had been given. It was held that as the defendants had a vested interest in the land created by the oil lease, which interest had not been terminated by the owner, the action to quiet title against such interest could not prevail. It clearly appears that the lease could not have been specifically enforced because of lack of mutuality of remedies.

In *California Trust Co.* v. *Cohn,* 214 Cal. 619 [7 Pac. (2d) 297], it was said:

"In support of its general demurrer plaintiff also relies on *Archer* v. *Miller,* 73 Cal. App. 678, 684 [239 Pac. 92], and similar cases holding that a contract of purchase and sale must be specifically enforceable and must, therefore, be alleged and shown to be just and reasonable in order to constitute a defense to a quiet title action. This line of authorities is without application to this cause for, as appears from the allegations of the cross-complaint, which are admitted by the demurrer, we are not here concerned with an executory contract of sale which it is sought to have specifically enforced, but rather with an executed transaction, the circumstances of which are legally sufficient, should the proof support the allegations, and the contract be accordingly reformed, to charge plaintiff as trustee for the defendants. The general demurrer is therefore without merit." (See, also, *Associated Oil Co.* v. *Myers,* 217 Cal. 297 [18 Pac. (2d) 668].)

From the foregoing authorities it seems clear that the instant case falls without the rule which has been generally stated, that a contract which cannot be specifically enforced furnishes no defense to an action to quiet title. We have here either an exception to or a modification of that rule under the later cases we have cited.

Under the allegations of the pleadings we must conclude that the true rule to be applied here is, that where an oil lease is supported by an adequate consideration, and where it has vested a present interest in the leased property in the lessee, which interest has not been terminated (and perhaps where the lessee is not in default), the owner may not quiet his title against such vested interest. The portion of the lease vesting the title in the lessee is an executed and not an executory contract.

It follows that as the answer set up an existing estate in the land in defendant the motion for judgment on the pleadings should have been denied. The respective interests of the parties in the land (assuming the evidence will show such an existing interest in defendant) should have been adjudicated after trial and evidence submitted by the parties. (*Peterson* v. *Gibbs,* 147 Cal. 1 [81 Pac. 121, 109 Am. St. Rep. 107]; *Wilson* v. *Anderson,* 109 Cal. App. 467

[293 Pac. 627] ; *Williams* v. *Rush,* 134 Cal. App. 554 [25 Pac. (2d) 888].)

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.