[Civ. No. 8427.  Third Dist.  Oct. 8, 1954.]

EARL W. CASTRO, Appellant, v. R. GOOLD & SON, INC. (a Corporation) et al., Respondents.

Thomas F. Fraga for Appellant.

Lafayette J. Smallpage for Respondents.

VAN DYKE, P. J.—This is an appeal from judgments entered in favor of defendants. Plaintiff and appellant, hereinafter called "Castro," is a paving contractor and contracted with defendant R. Goold & Son, Inc., one of the two respondents, hereinafter called "Goold," to perform certain paving work required to be done under a prime contract between Goold and Solano County Sanitation District No. 1. This prime contract called for the construction by Goold of a sewer system for the district. Defendant and respondent Pacific Indemnity Company, hereinafter called "surety," was the surety on Goold's performance bond. By this contract Goold agreed to perform all the work and furnish all the labor, materials, expendable equipment and all the utility and transportation services required to complete the work of constructing and installing the system. The contract was not a flat price contract. A number of documents were incorporated in the signed agreement. The work had been divided into nine items. Items 8 and 9 constituted the paving restoration which Castro by his subcontract agreed to do for Goold. Item 8 called for furnishing in place 975 tons of crusher run street repair at $5.75 per ton for a total of $5,606.25. Item 9 called for the furnishing in place of 390 tons of plant mix at a price of $8.70 per ton for a total of $3,393. The contract declared as to all items including Items 8 and 9: The "estimate of quantities of the various items of work to be included in the Contract is approximate only and is for the purpose of comparing bids. The District does not expressly, or by implication, agree that the final quantities, to be measured upon completion of the work as a basis for payment to the Contractor, will correspond with these quantities." And as to payments for Items 8 and 9 the contract provided specifically that the district obligated itself to pay "for the materials used in the pavement restoration up to eight (8″) inches outside the outside surface of the pipe and one (1′) foot outside the outside diameter of all structures. Any additional materials, work and equipment necessary due to overbreak, slides, caveins, or any

other reason shall be furnished by the Contractor at no additional cost to the District.'' The specifications contain the following provisions:

"Pavement Restoration—The price paid per ton of Plant Mix Surfacing and Crusher Run Base shall include full compensation for the following items.

"(a) All necessary excavation, shaping, and compacting of subgrade; disposal of excess material.

"(b) Furnishing Crusher Run Base; delivering, spreading, shaping, watering and compacting.

"(c) Furnishing Plant Mix; delivering, spreading, shaping, and compacting.''

The specifications further provided as follows:

"Restoring Pavements

"All avenues, streets and alleys through which the sewers are built must be restored in the following manner to existing line and grade.

"Where there is an existing bituminous surface on the area the backfill shall be made according to Section V, paragraph 12 of these specifications to within seven (.7) tenths of a foot of the existing surface. Crusher Run Base shall then be placed in accordance with Section 19 of the Standard Specifications of the Division of Highways, State of California for a depth of five (.5) tenths of a foot. The plant mix surfacing shall be placed on top of this base in accordance with Section 26 of the Standard Specifications of the Division of Highways, State of California, for a depth of two (.2) tenths of a foot.

"On travelled ways where there is no Bituminous surface the backfill shall be placed in accordance with Section V, paragraph 12 of these specifications to within five (.5) tenths of the existing grade. Crusher Run Base shall then be placed in accordance with Section 19 of the Standard Specifications of the Division of Highways, State of California.

"The District will pay for the materials used in the pavement restoration up to eight (8") inches outside the outside surface of the pipe and one (1') foot outside the outside diameter of all structures. Any additional materials, work and equipment necessary due to overbreak, slides, caveins, or any other reason shall be furnished by the Contractor at no additional cost to the District.''

Under the foregoing plain wording of the prime contract Goold was to restore pavement disturbed in ditching for the installation of pipe and other structures such as manholes. He

was to place .5 of a foot of impacted crusher run and over this to lay .2 of a foot of compacted plant mix. For the quantities used within those limits and within the horizontal area specifically described above he was to be paid $5.75 per ton for crusher run and $8.70 per ton for plant mix. The suggested tonnages, that is, 975 tons of crusher run and 390 tons of plant mix were specifically declared to be estimates only and Goold was not limited to these quantities, but would be paid for the quantities actually required in pavement restoration, measured, however, as above indicated. If anywhere Goold cut his trenches wider than the horizontal lines fixed by the specification for computing payment, any material needed to restore the pavement as to such excess was at Goold's cost. Likewise, if Goold, in performing his work, cut his pavement subgrade deeper than necessary to accommodate .5 of a foot of compacted crusher run base and .2 of a foot of plant mix surfacing the extra material required thereby would be at Goold's expense. The record does not show that there is any dispute about these provisions of Goold's contract nor as to how he was to be paid for pavement restoration and as to these matters Goold's contract is too clear to call for construction. The record likewise shows that he was paid for pavement restoration in accordance with those provisions of his contract and there is evidence that in cutting his trenches he would often cut beyond the limitations for payment and thereby necessitate the use of pavement material in excess of that for which he could claim compensation.

Goold executed a written contract with Castro which in material part provided as follows: The terms and conditions of the prime contract were made a part of Castro's contract by reference. Castro agreed to furnish the necessary labor and materials, including tools, implements, machinery and appliances required and perform and complete "all of the following described work as shown and described in and by, and in conformity with the plans, drawings and specifications for the same made by Wm. A. Jones, the authorized Architect employed by the Owner, and which are signed by the Owner and the General Contractor: Name of work: Solano County Sanitation District #1. Location of work: Solano County. Work to be performed: Item 8: 975 Tons Crusher Run Street Repair at $5.175 Per Ton. Item 9: 390 Tons Plant Mix at $7.85 Per Ton." The contract further provided that Goold would pay to Castro "the sum of the Unit price as bid upon completion." Castro completed the work of pavement restora-

tion, using far in excess of 975 tons crusher run and 390 tons plant mix. Not having been fully paid, he brought suit against Goold and the surety.

By his complaint he alleged the execution of his contract with Goold, and incorporated the written instrument in the complaint by reference. He referred to the work of Goold in backfilling the trenches, alleged that Goold was required by the prime contract to compact the backfill by tamping and that he had not done so with the result that due to rainfall the backfill material settled. He then placed a construction upon his contract with Goold, alleging as follows: That he had fully performed his obligations under that contract and in doing so that he "did furnish and install in the construction of said sewer line, with appurtenances, 975 tons crusher-run, for which defendant, R. Goold & Son, Inc., agreed to pay plaintiff herein, $5.175 per ton; that the total amount due plaintiff for said 975 tons crusher run is Five Thousand Forty-five and 62/100ths Dollars, ($5,045.62); that under the terms of said Articles of Agreement, plaintiff agreed to and did furnish and install in the construction of said sewer line, with appurtenances, 390 tons plant mix, for which defendant, R. Goold & Son, Inc., agreed to pay plaintiff herein, the sum of Seven and 83/100ths Dollars, ($7.83) per ton; that the total amount due plaintiff for said 390 tons plant mix, is Three Thousand Fifty-three and 70/100ths Dollars, ($3,053.70)." He averred that the total amount earned by him under the contract was $8,099.32. It is to be noted that by the foregoing specific allegations Castro treated his contract with Goold as calling for no more than the furnishing in place of the specific tonnages mentioned in both his contract and in that of Goold's with the district. He does not consider that these quantities, at least as between himself and Goold, were estimates only. Castro proceeds to allege that by reason of the sinking or settling of the untamped earth additional labor and materials were necessary to complete the pavement restoration by Goold and that Goold requested him to assist him in that completion, whereupon Goold orally agreed to pay him "the same price as set forth in the Articles of Agreement, marked 'Exhibit A', [the Castro-Goold contract] for all crusher run and plant mix furnished and installed" by him in the completion of Goold's contract with the district. He alleges he agreed to this and did furnish and install an additional quantity over and above those mentioned in his contract with Goold, these additional quantities amounting to 1,270.75 tons of crusher run and

659.80 tons of plant mix. After alleging some incidental extra items not material here, Castro in his pleading concluded that he was entitled to receive from Goold the price for these incidentals, plus the alleged prices per ton for the additional crusher run and plant mix, or an aggregate sum of $12,022.18. Adding the amounts he claimed were due under his written contract, that is, $8,099.32, he claimed a total liability incurred of $20,121.50. He alleged that he had been paid all but the sum of $10,334 and for this latter sum he asked judgment against Goold and the surety. As against the surety, however, he asked attorney's fees additionally in the sum of $3,500 under the provisions of the bond providing for attorney's fees if action were successfully brought thereon. It is thus apparent that the theory of Castro's action, as set out in his complaint, was that under his written contract with Goold he was to furnish in place a certain fixed number of tons of material at a fixed price, that he had done this and then under an oral agreement he had furnished additional quantities at the same price. The answer admitted that the total amount due Castro from Goold in accordance with their written agreement was $8,099.32 and alleged that this sum had been fully paid. The allegations that an oral agreement had been made were denied.

Upon these pleadings the cause went to trial and Castro introduced evidence in support of his contention that, when he had about finished furnishing the quantity of material he claimed he was obligated to furnish, he made an oral contract with Goold to furnish the balance necessary for complete pavement restoration on the job. Testimony was introduced by Goold and the surety contradictory of this, but some uncertainty had apparently developed in the minds of Castro and his counsel as to whether or not there might be another interpretation of his contract with Goold, that is, one whereunder he was obligated to Goold to complete the pavement restoration just as Goold was obligated to do the same for the district; that the tonnage quantities named in his contract with Goold were estimates only of the amount that would be required for complete pavement restoration, just as were the tonnage quantities named in Goold's contract with the district and that under that theory, he having completed the restoration, Castro was entitled to be paid at the tonnage price named in the written contract between himself and Goold. There seemed to be uncertainty also, at least in the minds of Castro and his counsel, as to how these tonnages were to be measured

for payment, that is, as to whether he, Castro, was to be limited as Goold was to the horizontal and depth limitations which the district could enforce against Goold. Much evidence was taken, but most of it had to do with how Castro's contract should be interpreted. There was evidence as to Goold's having cut his trenches wider than the payment limitations contained in his contract with the district and there was testimony that when Castro cut his grades he cut them substantially deeper than the specifications called for, so that he was compelled to put in more crusher run base than was necessary and more than Goold could have been paid for. Castro's pleadings were not amended.

The trial court found that Castro and Goold had executed the written agreement and that under the terms of that contract "Castro performed labor and furnished materials in the construction of said improvement"; that he had "been paid in full for all of said work and materials furnished" by him under the terms of the written agreement and that "at this date there are no moneys whatsoever owing from said Defendant Goold to said Plaintiff under the terms of this written agreement." The trial court found that there were likewise no moneys owing from the surety company to Castro under its bond, and finally the court found "that it is not true that the Plaintiff and Defendant Goold made any contract for the doing of the work and the performance of said contract other than the written contract attached to plaintiff's complaint," and that it was "not true that the said Plaintiff and the said Defendant Goold made an oral contract in and by which the said Defendant Goold agreed to pay the Plaintiff any moneys over and above that set forth in said written contract." Conclusions of law and judgment in conformity therewith were entered.

We think it must be said at once that the trial court's finding there was no oral contract concerning the furnishing of crusher run and plant mix is sustained by the evidence. Although Castro testified directly that when he had placed nearly all of the crusher run and plant mix material and was only about halfway through the pavement restoration he went to Goold, told him that such was the situation and asked him for a new contract and that Goold told him "the bills will be paid," so he went to work again under what he considered a verbal agreement. Goold, when asked about this conversation, said that he never had a conversation with Castro in which he told Castro if the district did not pay him

he, Goold, would, or in which he agreed to indemnify or reimburse Castro if the district did not pay and he denied that at any time he had any agreement with Castro, either written or verbal, "that changed the effect of the Articles of Agreement Goold had entered into with Castro. Another witness testified that he was present and within hearing at the time the alleged conversation took place and did not hear any such commitments on the part of Goold as Castro testified were then made. There is more evidence, express and implied, pro and con, upon the matter of the additional and oral agreement, and the finding of the trial court that the oral agreement was not made is binding here.

However, the finding against there having been any oral contract does not dispose of the matter, although, as noted, Castro placed a construction upon the written agreement to the effect that it only bound Castro to furnish the stated number of tons of material in place at the stated price, thus leaving him free to end his work when those quantities had been used and to negotiate a new contract for the balance of the pavement restoration. Nevertheless he also made the written agreement, by reference to the exhibit thereof attached to his complaint, a part of that pleading and all the pertinent documents referred to therein and constituting the prime contract were put in evidence. ■ It is familiar law that a pleaded construction of a written agreement contrary to the terms of the pleaded instrument itself is to be treated as surplusage. (*Stoddard* v. *Treadwell,* 29 Cal. 281; *Ventura & Ojai Valley Ry. Co.* v. *Hartman,* 116 Cal. 260 [48 P. 65]; *National Pavements Corp.* v. *Hutchinson Co.,* 132 Cal.App. 235 [22 P.2d 534]; *Pimentel* v. *Hall-Baker Co.,* 32 Cal. App.2d 697 [90 P.2d 588].) The answer of Goold and the surety essentially denied Castro's constructionary allegations, though admitting the allegations that only the sum of $8,099.32 became due and owing to Castro. In view of the state of the pleadings and of the record which shows that much testimony throughout the six days' trial had to do with the conduct of the parties under their written agreement it is apparent that the issue as to the construction of that agreement was before the court.

■ We need not repeat what has heretofore been said concerning the contents of the prime contract referred to in the Castro-Goold contract and concerning the language of the Goold contract. What has been said compels the conclusion that any implication in the findings of the trial court that the

Castro-Goold contract did not bind Castro to do all the work of pavement restoration which Goold was obligated to do under the prime contract or that the stated quantities of material to be placed was anything more than an estimate of the amount that would be required or that by that contract Goold did not become obligated to pay to Castro the stated price per ton fixed in his contract with Castro for all material placed within the quantities for which Goold was to be paid by the district are contrary to the clear provisions of the instrument which the parties executed. The contract is, we think, uncertain as to whether or not, if Goold cut his ditches too wide, the excess material necessary to be put in to complete pavement restoration would be paid for by Goold to Castro at the stipulated rate per ton or whether as to such excess Castro took the risk and agreed that, just as Goold could not collect from the district for such overuns, neither could he, Castro, collect from Goold. That such a contract would be made, thus leaving Goold, so far as his obligations to Castro were concerned, free to cut as wide as he pleased, at Castro's expense for repaving, may seem strange, but Castro testified in such a way as to furnish support for such construction. It is not necessary to follow this matter further. Concerning it the trial court cannot be said to have made any findings. The same must also be said about the contentions pro and con that the overrun was in part due to Castro's having cut his grades too deep and that the overrun was caused in part by Goold's failure to properly compact the backfill. The court's initial construction of the contract precluded the recovery by Castro of anything more under its provisions than a flat sum arrived at by multiplying the stated quantites by the stated price. It is clear, therefore, that the judgment must be reversed as to Goold.

In support of his appeal from the judgment in favor of the surety Castro urges that, notwithstanding anything in the contractual arrangements between himself and Goold, he has an independent right of action against the surety to be paid for all of the material which he furnished and placed in completing the pavement restoration. In support of this extreme claim he cites a number of cases having to do with the concept that a public works performance bond does furnish a separate cause of action upon which a materialman may sue, disregarding in many aspects the provisions of the prime contract. We have examined these cases and they do not uphold the final contention of Castro that the provision fixing

the amount that is to be paid for the subcontractor's work can be disregarded. The bond, which follows the language of the statute, declares that the surety shall pay "for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work to be done, or for any work or labor thereon of any kind . . ." if the prime contractor or his subcontractors shall fail to pay for the same. ██ Where the suit is for work done under a subcontract, recovery cannot be had against the surety, whether in an independent suit under the bond or in a suit in which the prime contractor is a party for anything more than under such subcontract the suitor is entitled to receive. There is, of course, no dispute in this case between the parties but that if a recovery is had against the surety, there shall be added to the amount the surety is to pay such reasonable attorney's fees as the court may fix in respect to the recovery of that judgment. It is unnecessary at this time to go further in the matter of the surety's obligations. It is obvious that the judgment in favor of the surety must be reversed along with the judgment in favor of Goold and the entire cause remanded for further proceedings in accordance herewith.

The judgments appealed from are reversed.

Peek, J., and Schottky, J., concurred.