[Civ. No. 21476.   Second Dist., Div. Three.   Oct. 23, 1956.]

LESTER SAMPLE, Appellant, v. ALVAH M. EATON, et al., Respondents.

Betts, Ely & Loomis for Appellant.

Spray, Gould & Bowers for Respondents.

WOOD (Parker), J.—Action for damages for personal injuries sustained by a spectator at a wrestling exhibition, when he was struck by a bottle of Coca-Cola that was thrown by another spectator. The defendants were: the proprietor of the wrestling club that conducted the exhibition; and one of the operators of the refreshment concession at the exhibition. In a jury trial, a nonsuit was granted. Plaintiff appeals from the judgment of nonsuit.

On June 4, 1952, plaintiff attended a wrestling exhibition at the Olympic Auditorium in Los Angeles. He had attended wrestling matches regularly at that place for approximately four years. On said June 4 he paid the required admission fee and sat in the end seat of the press row, apparently the row next to the wrestling ring. The wrestlers in the main event were one Romero and Dangerous Danny McShane.

Plaintiff testified that for approximately five minutes before the first fall in the main event, McShane was very rough, was pulling hair, pulling trunks and jumping outside the ring; for two or three minutes before and two or three minutes after the first fall, the spectators on the opposite

side of the ring from plaintiff were jumping up, fighting, booing and throwing paper cups, peanut sacks and "stuff like that" into the ring, and several persons were standing in the aisle shouting and throwing various articles; after the first fall McShane "strutted" around the ring, shouted at the customers on the opposite side of the ring (opposite plaintiff) and shook his fist at them; plaintiff stopped looking at the customers in order to talk to defendant Mr. Eaton, who had come to the place where plaintiff was sitting (plaintiff and Mr. Eaton were acquaintances); then plaintiff heard a commotion and turned, "and all of a sudden a terrific force hit me [him] in the mouth"; he looked down and saw that a full bottle of "coke" had fallen on his foot. He testified further that one of his teeth had cut through his upper lip, several of his teeth were loosened, and his jaw was broken.

On cross-examination he testified that about three or four minutes elapsed between the first fall and the time that he was struck in the mouth by the Coca-Cola bottle; he did not know where the bottle came from; on previous occasions when he had purchased liquid refreshment at the auditorium, the vendor put the refreshment in a paper cup; while he was in the dressing room receiving treatment for his injuries, the man who threw the bottle was brought into the room; the man said that he "lost his head" and threw the bottle.

Defendant Alvah M. Eaton testified that he was the sole proprietor of the Olympic Boxing and Wrestling Club; he conducted the activities of the club at the Olympic Auditorium in Los Angeles; there was a 20-foot-square wrestling ring in the center of the auditorium; the ring was enclosed by ropes and was surrounded by a ledge that was 2 to 4 feet wide; the seating capacity of the auditorium was 10,400; he employed ushers, private police and Los Angeles police officers to maintain order—the number employed at any event depended on the number of spectators expected; he estimated that about 5,000 spectators were present the night that plaintiff was injured; he did not know how many employees were on duty that night; at any wrestling or boxing match the spectators become excited, and sometimes they are more excited than at other times; Romero and McShane were known in the wrestling profession to be good drawing attractions; McShane was considered to be a rougher type of wrestler than the usual wrestler. Mr. Eaton also testified that he had a rule that a bottle should not be given to a spectator; he had instructed his employees not to permit a spectator to obtain possession

of a bottle under any circumstance; he had not instructed the ushers, vendors, private guards or police officers, who were employed by him, to quell a disturbance that might arise; he had seen spectators at the auditorium throw paper cups, popcorn wrappers, cigar butts and articles of that kind on occasions previous to the night that plaintiff was injured; it was very seldom that he had seen such throwing; he had instructed his employees to stop spectators from throwing things. Mr. Eaton testified further that he was in the immediate presence of plaintiff at the time plaintiff was injured; he saw plaintiff immediately after plaintiff was struck; plaintiff was bleeding slightly at the mouth at that time.

Mrs. Lopez testified that she attended a wrestling match at the Olympic Auditorium in Los Angeles when Romero and McShane were the contestants; she sat next to the aisle in the 10th or 12th row from the ring; for four or five minutes before the first fall, McShane pulled Romero's trunks and hair; everyone was excited and very angry, especially the man who sat across the aisle from her to her left (later identified as the man who threw the bottle); the man used bad language before the match began and became angry when McShane bit Romero; the man used very bad language and threw cups during the four or five minutes before the first fall; McShane went outside the ropes, onto the ledge surrounding the ring, and then (upon returning to the ring) gave Romero the ''atomic bomb'' or ''drop''; the referee raised McShane's hand (indicating that McShane had won the fall); at that time, a boy about 17 years of age, who was carrying a tray containing Coca-Cola bottles, stood in the aisle close to the man who sat across the aisle from her; the boy was looking at the wrestling ring; the man took a Coca-Cola bottle from the tray with his right hand and threw the bottle at McShane who was in the ring; the boy ''didn't do anything'' when the man took the bottle; she saw the bottle strike plaintiff who was seated in the first row on the opposite side of the ring from where she was seated.

Defendant Mrs. Eaton testified that there was an arrangement with her husband, Alvah M. Eaton, whereby she and her husband's father, Edwin Eaton, had and operated the concessions at the Olympic Auditorium; she and Edwin Eaton operated the concessions under the name of Olympic Auditorium Concessions; all the ''cokes'' dispensed at the auditorium from the cases carried by the vendors were dispensed by employees of Olympic Auditorium Concessions; the vendors

were instructed to retain all full and all empty Coca-Cola bottles, not to release the bottles, and to watch the bottles to the extent that they would not get out of the vendors' possession.

██ "A motion for nonsuit may properly be granted ' . . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' [Citations.] 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence . . . the trial court is not justified in taking the case from the jury.' [Citations.]'' (*Palmquist* v. *Mercer,* 43 Cal.2d 92, 95 [272 P.2d 26].)

██ The owner of a place of business must use reasonable care to protect his invitees "against injury through the negligent or wrongful acts of other invitees on the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom." (*Winn* v. *Holmes,* 143 Cal.App.2d 501, 504 [299 P.2d 994].) ██ He is under a duty to protect his invitees "by taking appropriate measures to restrain conduct by third persons which he should be aware of and which he should realize is dangerous." (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 810 [167 P.2d 729].) ██ In the present case the evidence showed that for six or seven minutes before plaintiff was struck by the bottle, the spectators on the opposite side of the ring from plaintiff were fighting and throwing various articles. There was no evidence that the ushers, private police, police officers or anyone made any attempt to stop the fighting among the spectators or to stop the throwing of things by the spectators. At the time the spectators were fighting and throwing various articles, the boy, who was carrying the tray of Coca-Cola bottles and was looking at the ring, stood close to the man, who threw the bottle—the man who for several minutes had been angry and had been used bad language and throwing paper cups. No one made any attempt to stop the man from taking or throwing the bottle. Mr. Eaton testified that he did not know how many ushers, private police or police officers were present at the auditorium the night plaintiff was injured; he had not instructed the vendors, or the ushers, private police or officers employed by him, to quell a disturb-

ance; he had instructed his employees not to permit a spectator to obtain possession of a bottle under any circumstances; on previous occasions he had seen spectators throw paper cups, cigar butts and articles of that kind; he had instructed his employees to stop spectators from throwing things.

It cannot be said as a matter of law that defendant Mr. Eaton used reasonable care to protect plaintiff from injury. Whether he used reasonable care to protect plaintiff was a question of fact for the jury. (See *Stockwell* v. *Board of Trustees,* 64 Cal.App.2d 197, 204-205 [148 P.2d 405]; *Thomas* v. *Studio Amusements, Inc.,* 50 Cal.App.2d 538 [123 P.2d 552]; *Philpot* v. *Brooklyn Nat. League Baseball Club* (1951), [Court of Appeals] 303 N.Y. 116 [100 N.E.2d 164].) In *Philpot* v. *Brooklyn Nat. League Baseball Club, supra,* plaintiff, a spectator at a ball game, was in a seat in a lower stand (of the grandstand) and a part of a broken Coca-Cola bottle fell or was thrown from an upper stand (of the grandstand) and struck plaintiff. The court said therein at page 121 (N.Y.): "Upon this record we cannot say as a matter of law that the means adopted by the defendant Baseball Club were sufficient to protect the plaintiff as a spectator at Ebbets Field from risk of bodily harm reasonably to be foreseen from the misuse or mishandling of empty glass beverage bottles." In the present case the motion for nonsuit as to Mr. Eaton should not have been granted.

It does not appear that defendant Mrs. Eaton, as an operator of the refreshment concession, owed a duty to spectators to protect them from injury resulting from wrongful acts of other spectators. In *Philpot* v. *Brooklyn Nat. League Baseball Club, supra,* the person who operated the bottled beverages concession at the ball park was also a defendant. The court therein said at page 121 (N.Y.) that the concessionaire neither owned nor controlled the baseball park (Ebbets Field), "nor was responsible for collecting spectators for profit" and there was "no proof of breach of duty owing to the plaintiff by that defendant." A motion for a nonsuit as to Mrs. Eaton was properly granted.

The judgment is reversed as to defendant Alvah M. Eaton; and is affirmed as to defendant Mrs. Alvah M. Eaton.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 14, 1956, and the petitions of appellant and of respondents for a hearing by the Supreme Court were denied December 19, 1956.