[Civ. No. 17468.   First Dist., Div. Two.   Sept. 10, 1957.]

HENRY NEWMAN, Appellant, v. CLINTON CAFETERIA COMPANY (a Corporation), Respondent.

Dean Cunha and Cunha & Hartford for Appellant.

Edward A. Friend for Respondent.

BRAZIL, J. pro tem.*—When this case was called for trial before a jury, the plaintiff's attorney made an opening statement of what he expected to prove, and just as soon as that was done the defendant moved for a nonsuit upon that statement. The motion was granted and a judgment of nonsuit was thereupon entered in favor of the sole remaining defendant, the Clinton Cafeteria Company. From that judgment the plaintiff appeals.

The appellant told the jury he would present the following evidence.

The plaintiff, a 78-year-old bartender, who lived up on Jones Street for the last 15 years, went to the nearby Clinton Cafeteria at 1095 Market Street for breakfast about 9 o'clock on the morning of April 1, 1954. He walked to the rear portion of the cafeteria, ordered poached eggs, and then, tray in hand, stepped back from the counter to wait for his order. He did this to be out of the way of other customers who, because of the nature of their orders, were not required to wait.

The cafeteria has two aisles for its patrons, only one of which was open for business during the slack morning period. It isn't easy to get a clear picture of the arrangement of aisles and counters from the opening statement, but it does appear, at least by inference, that the aisle being used was

---

*Assigned by Chairman of Judicial Council.

rather narrow, that it was near a service counter of some kind by which customers passed and gave their orders and picked up their trays. To keep people from going down the unused aisle, the respondent had placed a chain of what looked like brass. This chain was about waist high, it was fairly taut, with a little bow in the middle. The chain could have been placed considerably farther up the aisle and be just as effective in preventing people from using the aisle. Where it was placed "people were likely to bump up against it and put some pressure against it." The appellant said he would offer the chain in evidence, but nevertheless set out to briefly describe it as a metal chain of one-half to three-fourths inch links, of brass like material, a very soft metal and with very weak links which were in the habit of coming apart. The evidence might also show, the attorney said, that the cafeteria employees deliberately unhinged the chain in the middle when going down the aisle, rather than to step over or crawl under the chain.

When Mr. Newman stepped back to await his order, his back was about a foot from the chain and he was facing the counter. A customer in front of him with tray in hand turned around suddenly, the tray practically in appellant's face, and by reflex action he stepped back, maybe one step and in so doing hit the chain. The chain broke and Mr. Newman fell to the floor, breaking his wrist and spraining his back.

In granting the motion for a nonsuit, the trial judge observed that the chain was not put there to bear weight, or to be sat upon, that it was just a token and might just as well have been a pink ribbon, that it would have been a different situation had the chain broken from a use for which it was intended.

The granting of such a nonsuit is not favored and should be avoided unless the opening statement clearly shows that no cause of action in the plaintiff exists. (*Emmerson v. Weeks*, 58 Cal. 382.) Characteristic examples of circumstances justifying such nonsuits are: actions barred on its face by the statute, no statement being made to take it out of the bar (*Wrightson v. Dougherty*, 5 Cal.2d 257 [54 P.2d 13]), refusal to state evidence that dangerous wires which caused injury were responsibility of defendant as against judicial notice that they were operated by the United States Government. (*Mendez v. Pacific Gas & Elec. Co.*, 115 Cal. App.2d 192 [251 P.2d 773].)

■ " 'A motion for nonsuit may properly be granted ". . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." [Citations.] ■ "Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." ' " (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310 at 316 [282 P.2d 12].)

We are not here concerned with contributory negligence, for as yet there had been no testimony; and rare indeed is the case that compels a finding of contributory negligence as a matter of law. Certainly, nothing in what plaintiff's attorney said would justify such a legal conclusion.

While both parties to this action assert that no reported California case presents substantially the same situation that we find here, yet there are many judgments of nonsuits reversed where the underlying principles of law as applied to the facts are similar, a few of which are now cited. Plaintiff was injured by a rock slide on a mountain road in a jeep driven by defendant, the defendant having failed to heed warning of the dangerous condition of night driving on the road made impassable by heavy rains, and having also failed to take plaintiff's advice to turn around and go the safe way when there was still time to do so. (*Kaukonen* v. *Aro*, 142 Cal. App.2d 502 [298 P.2d 611]); plaintiff, a spectator, was hit in the mouth by a bottle of coca cola, thrown across the ring at a wrestling match by an irate patron who had taken the bottle from a refreshment vendor. The defendant was the promoter of the wrestling match. (*Sample* v. *Eaton*, 145 Cal. App.2d 312 [302 P.2d 431]); plaintiff was injured when tripped by a small dog in the aisle of a department store, the dog having been brought into the store by another prospective customer. (*Baley* v. *J. F. Hink & Son*, 133 Cal.App.2d 102 [283 P.2d 349]); plaintiff sued for injuries resulting from a fall in an office building when she caught the spike heel of her shoe in one of the small interstices of a floor

650

mat. (*Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226 [209 P.2d 1].)

■ As Mr. Newman was a business invitee, the respondent was obliged to exercise ordinary care to keep the premises in a reasonably safe condition or to warn him of danger. This duty was not limited to conditions actually known by the owner to be dangerous, but extended also to conditions which might have been found dangerous by the exercise of reasonable care. (*Blumberg* v. *M. & T. Incorporated, supra.*)

The respondent contends that, if there be any negligence responsible for the mishap, it was either that of Mr. Newman or the other customer whose conduct caused the appellant to move back. ■ We find, however, in section 302, Restatement of Torts "c. *Probability of intervening action.* If the actor's conduct has created a situation, which is harmless if left to itself but is capable of being made dangerous to others by some subsequent action of a human being or animal or the subsequent operation of a natural force, the actor's negligence depends upon whether he as a reasonable man should recognize such action or operation as probable." (Cited with approval in *Kaukonen* v. *Aro, supra.*)

■ Reasonable men can differ in their conclusions from the facts as revealed by the opening statement, when all reasonable inferences are considered. If this be true, then the decision is one of fact and not of law. The cafeteria is a public place, seeking customers from every kind and nature of person. These people differ in size, personality, age, ability to walk or stand and in their reflexes. The space between the service counter and the chain was evidently narrow, and occupied by persons intent on getting something to eat, some in a hurry and some with time on their hands. The chain, we can infer, looked solid, capable of supporting the weight of a man, but, because of softness of metal or other inherent weakness, would give way whenever a person placed his weight against it. We cannot infer it was only a token barrier or a pink ribbon that would give way with the slightest touch. Reasonable men could well believe that if the chain be placed where it was, although another place would be better and safer, it should be strong enough to bear weight and prevent a fall of anyone leaning against it, or it should be so weak that one falling against it would promptly break it or at least would not get even the momentary impression that it was sturdy enough to support a person's weight. The fact that the chain was used for a purpose not contemplated does not alter the

situation. Mr. Newman's use of the chain was not purposeful, it was the result of a reflex; it was the doing of something that he could not help. Certainly, it would be easy to give many other examples that might occur which would cause a patron to inadvertently fall against the chain barrier. Whether such happenings were reasonably forseeable are questions of fact and not of law.

Judgment reversed.

Dooling, Acting P. J., and Draper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 5, 1957.