ALFREDO PABÓN ESCABÍ, Plaintiff and Appellant, *v.* CHARLES AXTMAYER ET AL., Defendants and Appellees.

No. 319. Decided February 7, 1964.

*Justina Carrión de González, Enrique González,* and *Luis Gandía Arguelles* for appellant. *Brown, Newsom & Córdova, Pablo*

*R. Cancio*, and *Iván Díaz de Aldrey* for appellee Charles Axtmayer. *Rafael Martínez Álvarez, Jr.*, for appellee American Casualty Company.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro tempore, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must consider the novel question in this jurisdiction as to whether or not the owner of a hotel is liable for injuries sustained by one of his guests when the latter was attacked late at night in a hall of the hotel by two strangers who entered the hotel which customarily kept its main door open during the night without employing and maintaining a watchman or any other employee at the entrance, or in the office in the lobby of the hotel. Contrary to the holding of the trial court, the facts and circumstances which we turn to consider call for an affirmative solution.

According to the findings of fact of the trial court, which are supported by the evidence, Alfredo Pabón Escabí, appellant herein, checked in at 7:00 p.m. on January 22, 1957, in the hotel known by the name of Olimpo Court Apt. Hotel, in Santurce, Puerto Rico, and was assigned to room No. 38. The evidence further showed that upon noticing that the bed "was not made" he told appellee Axtmayer, owner of the hotel, as he left for a baseball game, that the bed "was not made" and that there were no pillows, and the latter promised that the maid would take care of that later. The maid testified that she tried to enter the room for that purpose, that she could not, left and did not return. The court says that "plaintiff returned to his hotel approximately at 1:30 a.m. of January 23, 1957 and parked his car in front of the hotel, noticing that at a short distance there were two hoodlums. During all the time he was on the sidewalk he was able to observe and did observe the hoodlums. Thereupon he opened the trunk of his car where he placed some personal

effects, among them, a revolver, and then proceeded to his room in the hotel and went in." The evidence showed that the only employee in the hotel office after 11:00 p.m. retired to a nearby room and the guests could not get in touch with him by telephone, and that in order to do so they were compelled to leave their rooms, go to the office and there ring a bell which sounded in the employee's room. When he returned to his room appellant noticed that his bed had not been made, as he had been promised, according to the practice of the establishment with which appellant was acquainted because he had stayed there on several occasions during the two years prior to the incident in question. He then tried to contact the clerk by telephone, was unable to, and left the room for the purpose of notifying him that he had no pillows. The trial court further says: "When he came out of his room, which is located at the end of the hall near a stairway leading from the entrance of the hotel to said hall, he was attacked by the two hoodlums whom plaintiff had already seen on the hotel's sidewalk, a fact which according to the evidence was not conveyed to the innkeeper or his subordinates. As a result of the assault plaintiff received injuries on several parts of the body, was rendered unconscious, having been removed later to the hospital." The trial court did not point out the fact indubitably established by the evidence that upon appellant's return to the hotel from the baseball game, the entrance of the establishment was deserted, there was no doorman, nor watchman, nor any employee in the office, so that there was no impediment nor any supervision at the entrance of the hotel during evening hours after 11:00 p.m. The police used to patrol the two avenues between which the hotel is situated where never before an incident had taken place similar to that which has given rise to this litigation.

The trial court dismissed the complaint in this case, briefly, for two reasons, to wit: (1) in Axtmayer acting negligently upon failing to see that the bed in appellant's

room was made, he could not foresee the possibility of the assault of which appellant was victim, nor was such assault a probable consequence of appellee's aforesaid omission, nor was such omission the proximate cause of the assault; and (2) the appellee was not under the duty to maintain watchmen or caretakers on all the floors of the hotel, nor was such duty warranted by the concurring circumstances and, therefore, he was not negligent because of such omission, apart from the fact that "it would be highly speculative to determine whether the presence of a caretaker or watchman on the premises of defendant's hotel would have been sufficient to prevent the assault of which plaintiff was victim."

Appellant bases his petition for review on four grounds, to wit: that the trial court did not adhere to the law nor to the facts proved (1) in its interpretation of the duties of the innkeeper toward his guests; (2) in concluding that appellee Axtmayer was not negligent in failing to provide vigilance for the protection of his guests; (3) in holding that appellee could not reasonably foresee that one of his guests could be assaulted inside the hotel in which no disorders nor assaults on guests nor acts of violence had occurred, such conclusion being contrary to the foreseeability doctrine, and that the same could be said of its interpretation of the doctrines of "proximate cause" and "intervening cause"; and (4) in concluding "that it would be highly speculative to determine whether the presence of a watchman on the hotel premises . . . would have been sufficient to prevent the assault."

The Innkeeper's Act of 1955, which covers specifically establishments such as Olimpo Court Apt. Hotel in this case, imposes on innkeepers the duty to provide *protection for persons* and property, and provides that an innkeeper "shall in no case be liable to any guest for any loss or damages occurring . . . *not attributable to the fault or negligence of the innkeeper.*" (10 L.P.R.A. §§ 711(a) and 714.) (Italics ours.) In this case it is therefore necessary to determine

whether both omissions, or one of them, in the duties of appellee, namely, the failure to make the bed and to maintain the hotel entrance open to the public free from any impediment or supervision, constitute negligence of the innkeeper and whether or not the same was the legal cause of the injury sustained by appellant.[1]

For the purpose of determining whether Axtmayer was negligent in incurring the two omissions referred to, we must determine whether or not the injury to appellee was reasonably foreseeable. In *Cruz Costales* v. *Commonwealth*, 89 P.R.R. 102 (1963), citing *Ginés* v. *Aqueduct and Sewer Authority*, 86 P.R.R. 490 (1962), we said that the rule of foreseeability does not mean that the precise risk or the results should have been foreseen; that the essential factor is to be under the duty to foresee in a general way consequences of a particular type; and that liability does not depend upon whether, in the exercise of reasonable diligence, the very injury complained of was or should have been foreseen; that it is unnecessary that the defendant should have anticipated the very injury complained of or anticipated that it would have happened in the exact manner that it did. See, also, *Baralt* v. *Commonwealth*, 83 P.R.R. 268 (1961), and *Weber* v. *Mejías*, 85 P.R.R. 72 (1962).

In *Goose* v. *Hilton Hotels*, 79 P.R.R. 494, 498, 499 (1956), we held that an innkeeper is not an insurer of the safety of his guests. The duty to protect them imposed by law extends only to the exercise of reasonable care for their protection.

---

[1] See the article by Professor Leon Green entitled *Duties, Risks, Causation Doctrines*, 41 Texas L. Rev. 42, 59 (1962), in which it is said that in negligence cases the courts have evolved and used a formula which presents four basic issues which the plaintiff must maintain: (1) causal relation between the defendant's conduct and the victim's injury; (2) the duty of the defendant with respect to the victim's injury; (3) the violation of the defendant's duty with respect to the victim's injury; and (4) the loss the plaintiff has suffered. See, also, the article by Professor Clarence Morris entitled *Duty, Negligence and Causation*, 101 U. Pa. L. Rev. 189 (1952).

There is no liability for injuries resulting from conditions from which a risk could not be reasonably anticipated. A guest has the right, however, to assume that reasonable care has been exercised in order that the premises be safe for him, and he is not bound, as in the case of a licensee, to be on the lookout to discover possible defects. Whether or not there is liability under the said principles depends on the facts and circumstances of each case. *McFadden* v. *Bancroft Hotel Corporation*, 46 N.E.2d 573 (Mass. 1943). In *Fortney* v. *Hotel Rancroft*, 125 N.E.2d 544 (Ill. 1955), a judgment was reversed relieving a hotel from liability for injuries caused by a stranger to a guest in her room early in the morning and a new trial was ordered, the court having concluded that defendant hotel was bound to explain how the stranger could gain entrance to her room without a key and how he could reach the fourth floor without being noticed by the clerk in charge of the desk. Such evidence was not presented. See notes entitled *Carrier—Assault on Passenger*, 77 A.L.R.2d 506, and *Patrons—Injury by Third Party*, 70 A.L.R.2d 645–49. In *Schubart* v. *Hotel Astor*, 22 N.E.2d 167 (N.Y. 1939), a hotel was held liable for injuries suffered by a woman while passing one evening through a revolving door when large numbers of people were entering and leaving the hotel, as two young men gave the door an extra hard push. The hotel did not maintain a doorman or attendant at or near the door and did nothing to control its operation or to supervise its use. Although in *McKee* v. *Sheraton-Russell, Inc.*, 268 F.2d 669, 672 (2d Cir. 1959), the case was remanded to the trial court, it was said that a hotel is liable for injuries caused to a guest upon discovering in her hoom a hotel employee who was off duty when she returned from the bathroom. See the note entitled *Torts—Liability of an Innkeeper for Personal Injuries to Guests*, 28 Fordham L. Rev. 559 (1959).

In *Southwestern Bell Tel. Co.* v. *Adams*, 133 S.W.2d 867 (Ark. 1939), *Garceau* v. *Engel et al.*, 210 N.W. 608 (Minn. 1926), and *Jesse French Piano and Organ Co.* v. *Phelps*, 105 S.W. 225. (Texas 1907), it was said that if a house is left unoccupied and open it is to be anticipated that it will be burglarized.

■ Under the circumstances prevailing in this community,[2] and according to the doctrine previously announced, leaving the entrance of a hotel open to the public during late night hours, unsupervised or without taking any other measures to control reasonably the admittance of persons, constitutes to a certain extent an invitation to malefactors, and therefore it was legally foreseeable[3] that the latter would enter the establishment with the intention of committing some offense, and that if they met a guest in the hall of the hotel owing to another omission of the appellee (failing to make the bed), that they would assault him for the purpose of robbing him. We therefore conclude that the omission to maintain a watchman or to take some other reasonable measure to control admittance to the establishment during late evening hours constitutes negligence on the part of Axtmayer in the performance of his duty to provide protection to his guests.

■ The negligence of appellee Axtmayer having been established, we must determine whether such negligence was the legal cause of the injuries suffered by appellant. Judg-

---

[2] According to tables 11 and 70 published in the Fifth Annual Report of the Administrative Director of the Courts, during the fiscal year 1956–1957 there were filed in the Court of First Instance of Puerto Rico a total of 16,236 cases for offenses against persons and 6,127 for offenses against property. Of the former, 14,838 were for assault and/or battery in different degrees and 83 for robbery. Of the latter, 503 were cases of burglary in the first degree and 114 of burglary in the second degree. As is to be presumed, San Juan registered an incidence greater than that of any other town as to criminal cases filed in that Court.

[3] 2 Harper & James, The Law of Torts 1145–51; Prosser, Handbook of the Law of Torts 141–42 (2d ed.).

ment of February 22, 1946, of the Supreme Court of Spain, 13 *Jur. Civ.* 519, 537. The legal causation necessary which together with the negligence produces the liability consists of two elements, to wit: causation in fact and proximate cause. 2 Harper & James, *supra* at 1110 and 1132; Prosser, *supra* at 218 and 252.

In order to determine whether appellee's omission is the cause in fact of the injury sustained by appellant, we must ask ourselves whether such injury would have been caused in the absence of appellee's omission. If the answer is in the negative, the causal relation between the omission and the injury is established. However, in the case under consideration this question cannot be answered categorically since we do not know, as stated by the trial court, whether a watchman would have prevented the admittance of the malefactors to the hotel. In this case we decide the problem of causation in fact on the basis of what in all probability might have occurred, and to that effect we conclude that it is most probable that the injury in question would have been prevented if there had been a night watchman or attendant at the entrance of the hotel. *Lee* v. *National League Baseball Club of Milwaukee*, 89 N.W.2d 811 (Wis. 1958); George C. Herget, *Negligence, Liability of Proprietor of Place of Amusement for Injury to Patrons Caused by Act of Third Persons*, 19 La. L. Rev. 890, 895 (1959); Mark L. Lamken, *Torts: Negligence: Duty of an Operator of a Place of Amusement to Protect Patrons Against Acts of Third Persons*, 6 U.C.L.A. L. Rev. 494, 496; Krause, *Negligence Duty of Care—Liability of Owner of Place of Amusement for Injury to Spectator Caused by Act of Third Person*, 56 Mich. L. Rev. 137 (1957); *Sample* v. *Eaton*, 302 P.2d 431 (Cal. 1956); Harper & James, *supra* at 1113–15; 2 Restatement of Torts, § 432; Prosser, *Proximate Cause in California*, 38 Calif. L. Rev. 369, 381 (1950).

■ We must determine next whether such casual relation is so proximate as to hold the appellee liable for the occurrence. This aspect of proximity should not be taken as relating to the time between appellee's omission and appellant's injury. Nor is it a question of distance between the place of one thing and another. Rather, it is a question of proximity in the sense of effectiveness or, as stated by Professor Jeremiah Smith, of *substantiality*.[4] Prosser, *Proximate*

---

[4] The element of substantiality, as complementary to the causation in fact, should be distinguished from the scope which the authorities have attributed to the term *proximate cause*. The latter, on which the literature has been abundant, has not been uniformly defined and its treatment has many times been confusing. In those cases in which attempt has been made to specify the meaning of "legal proximity," resort has been had to considerations which may be explained more clearly within the concept of negligence than within causal relation. In our effort to separate, at least analytically, these two elements of civil liability so that its understanding may be less difficult, we have deviated from the orthodox theory on proximate cause and adopted, for the sake of greater clarity, the suggestions of Professor Jeremiah Smith in connection with the substantiality or effectiveness of the causal relation, independently of everything which may be better grouped within the concept of negligence. (Smith, *Legal Cause in Actions of Tort*, 25 Harv. L. Rev. 103, 223, 303 (1912). We are aware that many authors criticize the position of Professor Smith as merely a distinct form of expressing the same as the term proximity (Morris, *Duty, Negligence and Causation*, 101 U. Pa. L. Rev. 189, 206 (1952)), but in our opinion such criticisms are the product of an erroneous understanding of the concept of substantiality. It is not correct, as stated for example by Morris, *supra* at p. 206, that every real cause connected with an event is also substantial, and that, therefore, all the factors which compose the chain of causation of a damage be substantial in the same degree if the damage had not been caused but for the intervention of any of them. It would not be reasonable to conclude that the fact that an automobile had sufficient gasoline in the tank to reach the scene of an accident is so substantially connected with the death of a passenger as the fact that a dog stopped on the road causing the driver to swerve and lose control of the vehicle. It is true that the death would not have occurred in the absence of either of these two circumstances; however, it is no less true that in order to attach more weight, more importance, more *substantiality* to the latter (the dog's intervention) than to the former (sufficient gasoline), it is not necessary to pass on the question of negligence. The popularity of the test proposed by Professor Smith has been increasing since its adoption by "Restatement of Torts" in 1934, §§ 431–35. See Harper & James, *supra* at 1159.

*Cause in California*, 38 Cal. L. Rev. 369, 378 (n. 26), 381 (1950). Were appellee's acts such a substantial cause of the injury to appellant that he should be held responsible therefor? Or is the omission of appellee so remotely connected with the injury that it is not recognized in law as one of the proximate causes? Was there an intervening cause of such a nature as to produce the effect of destroying the causal relation between the omission and the injury in this case, or of diminishing the same to the point of exonerating the appellee from liability? We have no doubt that the omission of the appellee to exercise reasonable control over the access to the hotel during late evening hours made it feasible and facilitated the admittance of the malefactors, and that, therefore, such omission was the substantial and real cause of the injuries suffered by appellant. Having concluded that the mischief of the malefactors was foreseeable as a probable consequence of appellee's omission, the same cannot be considered in law as a defense to an intervening cause. *Marquardt* v. *Orlowski*, 151 N.E.2d 109 (Ill. 1958); *Wright* v. *United States*, 95 F.Supp. 943 (Ct. Cl. 1951); Harper & James, *supra* at 1141–45.

■ There remains for determination the amount of the injuries sustained by appellant. The record shows that as a result of the assault of which appellant was victim, he received injuries on the neck and several parts of the head which rendered him unconscious and, consequently, caused his fall and profuse external hemorrhage. He was hospitalized suffering from acute pains on the whole body, particularly in the head, neck and eyes, since early in the morning of January 23, 1957. He was hospitalized from that date until February 5 of the same year, and afterwards remained in bed in his home without being able to work owing to the consequences of such blows until the last day of August 1957. He experienced pains in the neck, the head and the body; he fainted when walking, being compelled to remain

in bed most of the time. After the accident it has been observed that he is forgetful, nervous, and becomes easily irritated, and this produces headaches. He earned an average of $250 a month from commissions. The hoodlums robbed him of $102 in cash, also a watch for which he paid $79; he lost the suit which he was wearing that night and for which he had paid $65 three or four months prior thereto, and the eyeglasses which cost him $10. According to the medical certificate issued by San Patricio Hospital, appellant suffered trauma on the supra-orbital region, on the right parietal region, and on the left temporomandibular region; he had lacerations on both eyebrows, ecchymosis of the skin, and contusions in several places. We appraise his injuries at $7,500 in addition to the special damages which in our opinion amount to $1,982.

For the reasons stated, the judgment rendered in this case on March 17, 1960, will be reversed and another rendered instead sustaining the complaint and ordering appellees to pay to appellant the sum of $9,482 for damages, plus the costs, including those of this appeal.